MASONIC TEMPLE ASSOCIATION *vs.* ARNOLD HARRIS.

Waldo.    Opinion March 7, 1887.

*Waters.   Streams.   Drains.   Prescription.   Nuisance.   Injunction.*

The city of Belfast has, for a long period, maintained an underground or covered drain, running through an ancient brook which, in its natural state, carried a considerable volume of water through the city to the sea. For many years the drain has served to carry off waste water and foulings from the houses and stores situated in its vicinity. The complainant and respondent have adjoining premises through which the drain runs. Lately the city diverted the drain at a point just above complainant's premises, carrying it around the premises of both parties, and uniting the new link with the old drain below respondent's land. Thereupon, the respondent threatened to stop up the old drain on his own land, thereby preventing the complainant using it, alleging that its occupation is wrongful and injurious to him — the complainant denying it. And the complainant claims not only the right to have the benefit of the natural brook for its waste, but also the right to a greater enjoyment of it, acquired by the public by user.

*Held,* that the complainant is not answerable for any consequences of the diversion caused by the city. But their privileges may be curtailed thereby, as next stated.

*Held,* also, that the respondent should not have any increased burdens or inconveniences put upon his premises by the change; and that his burdens should not be augmented, to his injury, by the act of the city, or of the complainant, or of both combined. The respondent is not to be a loser, if not a gainer, thereby.

*Held,* further, that, if the complainant, by this rule, suffers from the act of the city in making the diversion, the city will be answerable to it for any damages sustained, unless the complainant assented to the change, and the evidence is that it did assent to it.

The right to pollute a stream to a greater extent than is permissible of common right, may be acquired by the public or by individuals by prescription.

If the complainant has a prescriptive right to maintain, or have maintained,

a close underground drain across respondent's land, it may continue using it to any extent which will not affect respondent more injuriously than as heretofore used. In such case it is not perceivable that it would make any difference whether the amount of foulings sent through the drain be more or less.

If, however, the complainant has only the prescriptive right of having a drain maintained, over respondent's land, which shall be subject to openings to be made in it for the private uses of the respondent, the complainant must be confined to a more restricted use of the drain, if a more restricted use be necessary to save any annoyance, to the respondent, more than existed before the diversion.

An abuse of a prescriptive right does not create a forfeiture of the right, to use it lawfully.

If a person feels aggrieved at the acts of another in over-using or abusing a prescriptive or natural right in a drain in which he is interested, he may sue him for damages, or procure an indictment against him, or move in equity for an injunction. But he would not be justified in entirely cutting off the drain in which the encroaching party has some right of use, and where the summary act would strike a blow at both individual and public privilege.

Such a threatened act is restrainable by injunction.

*William H. Fogler and R. F. Dunton*, for the plaintiff, cited : *Ashley* v. *Wolcott*, 11 Cush. 195 ; *Luther* v. *Winisimmet Co.* 10 Cush. 174 ; *Morrison* v. *R. R. Co.* 67 Maine, 356 ; Gould, Waters, § § 204, 210, 270 ; Angell, Watercourses, § § 115, 123, 200, 444 ; Wash. Real. Prop. 67 ; *Murchie* v. *Gates*, 78 Maine, 300 ; Bigelow, Estoppel, § § 369, 509, 512 ; Story. Eq. Jur. § 927 ; High, Injunctions, § § 545, 556.

*George E. Johnson*, for defendant.

When the object for which an easement is created no longer exists, the easement is at an end.   Wash. on Eas. 700 ; 1st Add. on Torts, 160, 161.

The same rule applies in this case as to a right of way.   A way by necessity is commensurate only with the existence of such necessity, so that when the necessity ceases the right of way also ceases.   *Id.* 165 ; Angell on Watercourses, § § 165, 166 (5th ed.).

If the act which prevents the servitude be incompatible with the nature or exercise of it, and be by the party to whom the servitude is due, it is sufficient to extinguish it ; and if it be extinguished for a moment it is gone forever.   *Id.* § 247.

Where a right is suspended by the act of God, as by the

drying up of the spring, it will revive again if the spring chance to flow; but if it be suspended by the act of the party, as by building a house or wall, it would not be restored, even though the obstacle should be removed by a stroke from heaven. *Id.* § 248.

If the owner of an easement, by permanent erections, obstruct and render it useless, the easement is extinguished, especially in favor of a *bona fide* purchaser. 16 Wend. 531.

This watercourse was built for the purpose of carrying off the surplus water which accumulated above High street, and was so used until complainant stopped the flow of water in 1878, and connected eight water closets and several sink pipes therewith, thus increasing the burden upon the servient estate. Either of these acts of complainant would destroy its right to the use of this sewer. First, it destroyed the sewer itself; secondly, it has appropriated that part remaining for a radically different purpose from that for which it was originally designed. Wash. on Eas. 64, 175, 176, 700; 2d Wash. on Real Prop. 342 (3d ed.) In *Steere* v. *Tiffany,* 13 R. I. 568, "Where a way had been laid out for the common use of lots bounded on it, and A, the owner of one of these lots, had appropriated to his own use the part of the way opposite his lot, it was held that A had abandoned his easement and could not maintain an action against the owner of another of the lots for obstructing the way."

To authorize an injunction, there should be not only a clear and palpable violation of the plaintiff's rights, but the rights themselves should be certain, and such as are capable of being ascertained and measured. *Olmsted* v. *Loomis,* 6 Barb. 152.

Complainant had no legal right to connect its pipes with this sewer, even if it should be held that it is a public sewer. R. S., c. 16.

The sewer extending down Spring street has been substituted by the city for this old one, and that is the one which complainant should connect pipes with. *Dolliff* v. *Boston & Maine R. R.* 68 Maine, 177.

Peters, C. J.    The respondent threatened to obstruct a drain running through his land from the complainants' premises down-

ward into Belfast bay. The evidence shows that the route traveled by the drain was an ancient natural brook, in former times carrying a considerable volume of water, during the wet seasons of the year, through the city of Belfast into the sea; that for many years the city has supported an underground or covered drain in the place of the brook, extending through the brook its whole length, from an upper part of the city to the bay; and that this drain has served to carry off waste and foul materials from shops, stores and houses situated upon it. The complainants own a large block, lately erected, containing stores, offices and halls, fitted with water closets, the contributions from which, together with a large volume of water collected in cisterns for flushing purposes, are emptied into this drain.

The respondent justifies his threatened violence upon the drain, upon the ground, as he alleges, that, while the complainants' building was in process of erection, the municipal officers of the city diverted the drain at a point immediately above the building, carrying it around the land of both the complainants and the respondent, and connecting the new link with the old drain below them; the effect being to lessen the water-power of the watercourse, although increasing its burdens; and in consequence thereof bringing upon the respondent's premises odors which render such altered and increased use of the drain a nuisance to him.

The complainants deny such assertions. While admitting the diversion, they disclaim all responsibility of it, and contend that, as matter of fact, more water goes into the drain, in proportion to the waste and filth passing through it, than before the diversion. They further claim that, besides a natural right of using the original watercourse, they have acquired, in common with others, an easement for a more extended enjoyment, by long continued user. Their position is that as a part of the public, they were entitled to have maintained over the respondent's land an underground, closely covered drain, from which no odors would be emitted, and no annoyance felt by the respondent, if he had not wrongfully, in an improper manner, opened the drain on his land for his own purposes. The complainants do not regard the proof as establishing much of a nuisance, if any.

The evidence of the case is not of a very definite character in all respects. It is enough for present purposes, upon which to predicate some legal propositions for the guidance of the parties, if the legal controversy be continued between them. It does not with certainty appear when and how the drain became a covered drain on respondent's premises, nor how tightly it has been heretofore maintained there and elsewhere. It does not appear that any drain has been laid out under statutory authority, though it seems that the city has for a long period exercised care over it — and perhaps built it. Evidently, the waters of the brook, for more than a half century, have only been useful for carrying off waste of various kinds.

Whether the complainants are to be affected by the act of the city in causing a diversion, and, if so, to what extent, depends on circumstances. They are not directly answerable for the act. They are not to be cut off below because cut off above. Their own hand has not done it. They have a natural right to use the original brook — the natural watercourse. No one can prevent the exercise of that right. *Ashley* v. *Ashley*, 6 Cush. 70. Nor can the complainants' easement greater than the natural right be thus taken from them; and it is evident enough that they had an easement in the brook or drain, acquired by user.

Still, it is our opinion that the respondent should not suffer any injury by the change. His burdens and inconveniences should not be increased thereby any more than the complainants' should. The complainants are entitled to use the drain in its changed condition, precisely to an extent which will not inflict more annoyance or injury upon the defendant than he was legally obliged to endure before the change. The respondent is not to be a loser — nor a gainer — by the change. The change cannot add to the burdens of easement upon his land,— nor lessen the legal burdens already resting upon it. The respondent's burdens should not be augmented, to his injury, either by the consequences of the act of the city, or of the complainants, or of the acts of the city and complainants combined.

We are using the drain to no greater an extent now, say the

complainants, than we were before,—than we ever did. The answer is, but your former use and enjoyment of the drain were only relative — dependent — conditional. It was a right to send down your share of the accustomed pollution, provided water came from above interfused with it. Suppose the city had blocked up the drain just below the respondent's land,— could the complainants be permitted to fill the watercourse with foulings from their buildings to the injury of the respondent? In principle, where is the difference whether the obstruction is made above or below, if it renders the drain a nuisance? It necessarily follows that, if the city has cut off a natural watercourse or an acquired easement from the complainants, the city would be answerable to them for any hurtful consequences, unless the change was assented to by them, and then the act as affecting them would be *damnum absque injuria*; and there is evidence in the case that they did assent to the change, and that they even induced the city to make the change.

Upon the facts presented, certain propositions are derivable, in addition to those already stated, and growing out of them, which may further explain the relative rights of the parties.

There is no doubt that the right to pollute a stream to a greater extent than is permissible of common right, may be acquired by prescription. Gould, Waters, § 345, and cases in note. We need not now define a prescriptive easement or explain how one may be acquired.

If the complainants have a prescriptive right to maintain, or to have maintained for their benefit, a close underground drain across the respondent's land, they may continue using it to any extent which will not affect the respondent more injuriously than when heretofore used as a close and covered drain. In such case, we do not perceive that it would make any difference to the respondent whether the amount of pollution passing *through* and *under* his land be more or less. We all know that in the large towns and cities drains are laid under houses, stores, and along the streets, and are unobjectionable as long as properly constructed and properly maintained. In such case, if the respondent uncovers the drain in order to locate privies upon it,

thereby creating a nuisance in the neighborhood; he must submit to the consequences of his own act.    Few drains will admit such openings without the presence of nuisance.    Filth may be carried into the channels provided for it in a manner more recommendable.    Of course, if there be a covered drain, those who maintain it should keep it in good repair.

If, on the other hand, the complainants are not entitled to maintain a close drain over the respondent's land, but only a drain subject to openings such as the respondent made in it for private uses of his own, then the complainants would be entitled, as before described, to no use of the drain that will inflict greater annoyance or injury than was imposed on him by such prescriptive easement as existed before the diversion.    Gould, Waters, § § 342, 344, 345, 346, and cases.    And, in such case, it might make a difference to the respondent whether the amount of foulings contributed by the occupation of complainants' buildings be one quantity or another.

Under the evidence, this bill must be sustained, whatever the rights of the parties may be in any future litigation.    In any view, the complainants had a right to use the drain for some purposes — to some extent.    They have never lost or abandoned such right.    Even an abuse of the right does not deprive them of it.    Gould, Waters, § 348.    *Locks and Canals* v. *Railroad*, 104 Mass. 8.    The respondent was intent upon a total destruction of the water passage, preventing any use whatever of the drain by complainants.    The result, had he been unopposed, would have been a wanton blow against both individual and public privilege.    The respondent's lot, through which the drain runs, is not of much value and from its situation never can be, costing him fifty dollars to obtain title to it some years ago.

The respondent mistook his remedy.    If aggrieved, he can sue the complainants for damages ; or procure an indictment against them ; or, the most fitting remedy, can move for an injunction in equity, a jurisdiction whose door is always open for the reception of complaints and early action on them.    The respondent was bent on a swifter remedy than equity would accord, for equity, acting by injunction, withholds the blow in such case

until those interested can make preparation for both private and the public needs. *Boston Rolling Mills* v. *Cambridge*, 117 Mass. at p. 401, and citations there.

*Bill sustained with costs.*

WALTON, DANFORTH, EMERY, FOSTER and HASKELL, JJ., concurred.