(56 Misc. Rep. 253.)

### TOWNSEND v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Special Term, Ulster County.   May, 1903.)

1. EASEMENTS—DUTY TO KEEP IN REPAIR.

It is the duty of one having a right of way over property of another to keep the right of way, or at least the approach thereto over his own lands, in repair, though this rule does not apply in case of farm crossings over railroads, provided for in the statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Easements, §§ 117–119.]

2. RAILROADS—USE OF RIGHT OF WAY.

A railroad, whose right of way ran through plaintiff's premises, erected on its right of way a platform for the reception and shipment of freight. Plaintiff contended that the placing of the platform was an unreasonable burden on the right of way, and that by reason of its maintenance persons desiring to reach the platform went on a portion of a dock owned by plaintiff. Held, that no right of action against the railroad existed, in view of evidence that plaintiff might, by the erection of a short fence, prevent persons using the platform from going on her land.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 179–182.]

3. NUISANCE—WHAT CONSTITUTES.

The action of a railroad in permitting surface water from one side of its track to escape to the other side alongside of a highway does not create an actionable nuisance.

4. RAILROADS—USE OF RIGHT OF WAY.

A railroad has the first right to the use of its right of way, acquired by condemnation proceedings for the purpose of its railroad, and may make such reasonable changes in its tracks as may be necessary for the advantageous use of its property and its growing needs as the change of commerce dictates.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 179–182.]

5. SAME.

Where the owner of land, through which a railroad right of way passed, used certain crossings, no cause of action against the railroad accrued to him by reason of slight alterations of the grade of the tracks and roadway of the railroad, making the approach over the crossings a trifle more difficult.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 179–182.]

Action by Theophelia G. Townsend against the New York Central & Hudson River Railroad Company. Judgment for defendant.

Bernard & Van Wagonen (Howard Chipp, of counsel), for plaintiff. Amos Van Etten, for defendant.

BETTS, J. Prior to December 31, 1881, one Jacob Handley owned certain dock premises on the Hudson river at Milton, in the town of Marlborough, in this county, at and from which several steamboats rented piers or docks and carried on a general passenger and freighting business, and on said December 31st, the New York, West Shore & Buffalo Railway Company, the predecessor in title of the defendant, acquired a certain strip or portion through said premises by condemnation proceedings for the purpose of constructing and operating its proposed railroad, paying to said Jacob Handley therefor the sum of

$10,500, and eventually constructed its road and operated the same over said land so acquired. The defendant herein has succeeded to the rights of the said New York, West Shore & Buffalo Railway Company, and the plaintiff herein has by devise succeeded to the rights of Jacob Handley in said property in question remaining in him after such condemnation proceeding, and also the lands on the east and west of said right of way. The plaintiff herein alleges in her complaint, in substance, that since the acquirement of said premises from said Jacob Handley additional burdens have been placed upon the same by defendant, not in contemplation of the parties at the time of the condemnation proceedings. The principal complaint is that the grade of the track and roadbed of said defendant has been raised between two and three feet above the track and roadbed contemplated by the parties at the time of the said condemnation proceeding and that additional height above the tracks and roadbed as originally constructed. Various other lesser claims are made which will be referred to later.

After this land was taken by the railway company, a strip of 75 to 100 feet, more or less, in width along the entire river front, was left in the ownership and possession of Jacob Handley on the east side of the railroad company's right of way, and later of this plaintiff, which has since been put to about the same purposes that it was prior to the acquisition by the defendant's predecessors of the right of way. It is used principally as a dock or landing place for steamboats. Other than this land, the plaintiff also owns considerable land upon the west side of the defendant's right of way. Crossing this right of way is a main highway leading from Milton to the Mary Powell dock of the plaintiff. There are also two other crossings constructed by defendant's predecessors across this right of way, which are used by the plaintiff and her patrons and tenants; one from this highway to the north side of a storehouse of the plaintiff at which steamboats land, and the other, farther south, from the southerly side of said storehouse, crossing to the west of the railroad lands, and again coming on the lands of the plaintiff upon the west side of said railroad lands. A great deal of evidence has been taken in this case, and the entire testimony submitted on the condemnation proceedings has also been introduced.

The plaintiff claims that on many different occasions the defendant has raised the grade of its roadbed through the right of way, until it has now reached a height of between two and three feet higher than the six feet above high-water mark originally contemplated; that this has been done at various times; and that in 1900 an increase in such elevation was made of quite an extent by the defendant, soon after which this action was begun. The defendant contends that no change has been made in the elevation of its tracks or roadbed, except, after settlements, to bring the same up to the original grade, until in the summer of 1900, when the track and roadbed were stone-ballasted, raising the base of the rail not to exceed five or six inches from its original position; that the track over portions of its roadbed along the property of the plaintiff was over made or filled ground, and that the continued operation of heavy trains caused the same to settle; that from time to time the tracks were raised to the original grade or level,

and that the only time there was any material raise was at that time in 1900; that at the time this was done, or about this time, the tracks for some four miles, including this dock property, were stone-ballasted, and it was all part of a general scheme of this railroad company to ballast its entire tracks, which has been continued from time to time since at different places; and that this was in accordance with improved railroad methods adopted by other trunk line railroads.

There was nothing in the original petition in the condemnation proceedings, the answer of the defendant Handley, the report of the commissioners, or the order confirming the same, which in any way referred to the proposed grade of the railroad. There was, however, testimony of an engineer of the then petitioner that the grade would be "six feet above high-water mark and on a level with the floor of the office"—"about four feet fill on the easterly side." The office was removed when the railroad was built. The owner (Handley), from his testimony at that time, evidently considered that this raise of grade would be for the entire width of the right of way acquired, instead of that portion required for the tracks and the short distance between them. It is alleged in the complaint that the defendant's predecessor, the New York, West Shore & Buffalo Railway Company, in taking said strip of land, agreed and bound itself that the grade of said railway company, as it passes through the said lands of the said Jacob Handley, should not be at a grade or elevation to exceed the height of six feet above the usual high-water line of the Hudson river, and that under such agreement the defendant has no right to raise the grade above the said six feet. No such agreement was proven in this action or attempted to be.

It is further claimed by the plaintiff that the raising of this grade of the defendant's roadbed makes the docks of the plaintiff more difficult of access from the highway to the village of Milton by teams or wagons, that the grade is such now that the teams cannot draw as large loads to or from said docks as they did prior to said raise of grade; that the plaintiff and defendant are competitors in the freighting and forwarding business; and that obstacles placed upon the defendant's tracks or right of way, or an additional elevation of them, inures necessarily to the benefit of the defendant. Some evidence has been given that a lesser weight can now be drawn from the docks of the plaintiff over one crossing than heretofore; but no testimony has been given that I recall that any customer of the plaintiff's tenants (freighters and forwarders) has quit coming to said dock or stopped doing business with the plaintiff's tenants because of any change of grade, actual or alleged.

The customers and patrons of the plaintiff's tenants exercise the right of passing over the highway to the Mary Powell dock, and plaintiff does not complain of any great change of grade there, but alleges that it is a more serious matter at the two so-called private crossings. Of course, the defendant has the primary right of way across the property of the plaintiff, and the plaintiff's right of crossing the defendant's property at her two crossings must be used in subordination to the primary rights of the defendant therein, in the reasonable use and operation of its railroad. The very term "right of way," as designat-

ing the property of the defendant, is illustrative of the character of the right it has. It has the first right of passage. It has primarily the right to use this land for its necessary railroad purposes, and the right of the plaintiff to cross at these two crossings is secondary and subordinate to the defendant's reasonable, necessary use thereof for railroad purposes.

It is a general rule that one who has a right of way over the property of another person must keep that right of way, or at least the approach thereto over his own lands, in repair. This is not so in case of farm crossings over railroads provided for by statute; but these are not farm crossings. This is what the plaintiff has with her crossings over the right of way of the defendant. While the defendant may not raise its tracks and roadbed in such a manner as to shut out the plaintiff or her tenants from any crossings, or use thereof, still the defendant is not, in my judgment, required to make an additional payment to the plaintiff every time it makes some small needed changes or improvements in its track and roadbed, and the plaintiff must adjust her approach to the right of way of the defendant herself. It is apparent, from the testimony in this case and from the maps and exhibits filed here, that a very few loads of dirt or gravel properly placed upon the approach to these private crossings upon the dock of the plaintiff would reduce the grade of the approach from the plaintiff's dock across the roadbed of the defendant and render the same fairly gradual. Manifestly defendant could not go upon the lands of the plaintiff east of the railroad right of way and maintain an approach to these private crossings, and equally clearly there is no reason why it should do so. See Williams v. Clark, Receiver N. Y. & N. E. R. R. Co., 140 Mass. 238, 5 N. E. 802, where one Hill, plaintiff's grantor, conveyed land to a railroad company by a deed which provided that grantee was to furnish Hill, his heirs and assigns, with two convenient crossings over its railroad, the one in question to be at grade, and to forever after maintain it. Such crossing was constructed by the railroad on its own land, adapted to the grade as then fixed. Later the grade of the railroad was raised, and the question came up in this case by whom the expense of raising the approaches to the same should be borne. It was held that the plaintiff was not entitled to demand from defendant the expense of changing the grade of the approaches. See, also, Cassidy v. Old Colony R. R. Co., 141 Mass. 174, 5 N. E. 142, where it was held that plaintiff, an adjoining owner, was without redress, where defendant, by raising the grade of its railroad, flooded the premises of plaintiff with surface water.

I am convinced that the only appreciable change or raise in the grade of the defendant's roadbed or tracks, which raised it above its original elevation, was made of a few inches when the tracks were stone-ballasted, and that that did not exceed five or six inches, and that this elevation was of so small an amount, distributed over the grade to reach the same from defendant's premises on the east—the tracks and roadbed being near the center of defendant's right of way, but a little nearer the east side—as not to put any appreciable additional burden on plaintiff's said premises since the track and roadbed were first constructed.

When the defendant's road was first constructed, in addition to the two main tracks, the south or east-bound track and the north or west-bound track, there was also a switch laid upon the westerly side of said two tracks, which began some distance south of the property of plaintiff and came back to the north or west-bound track somewhere north of the highway leading across the plaintiff's premises. Some time about the year 1893 the defendant or its predecessor took up a portion of such switch north of said highway, across it, and for a short distance south thereof, placed a pile of stones at the said north end of the rails near said highway, leaving open said switch south of said highway, and has used the same since as a siding for the purpose of loading and unloading freight cars. Between this siding and the north or west-bound track of the defendant, the defendant has constructed a wagon road from the highway, which leads down past the said siding, for the convenience of persons desiring to load or unload cars standing on said siding, and also to reach its station and freight house, which is a short distance to the south of and adjoining the property of the plaintiff. The plaintiff claims that this roadway is a burden which this right of way should not be called upon to carry, that it serves to divert the public from the plaintiff's dock to the defendant's property, and that its construction and use have destroyed the value of a building which was fitted up for a store and dwelling, belonging to the plaintiff and on the west of said siding and near to the lands of the defendant; that it has rendered said building unrentable on account of the large amount of dust raised by railroad trains coming along the roadbed constructed by the defendant. It appears from the testimony of Mr. William H. Townsend, the plaintiff's husband and agent, and a man accustomed to courts and testifying therein, that this roadway was built by the defendant in 1892, that the building in question was erected by the plaintiff in 1882, and only rented for about one year thereafter, and not rented since by any one. It is a little difficult to understand how the income-producing powers of this building were destroyed in 1883 by a roadway that the railroad company built nine years thereafter. It appears in the testimony that the plaintiff and her agent and family use this roadway frequently in their own business. It simply provides a little shorter way for those people who use the main highway coming from Milton to this dock to go to the railroad station and freight house and return. It is put there for the convenience of the defendant's patrons, and serves this purpose, and I cannot see that any incidental purpose that it has interferes with any rights of plaintiff or damages the plaintiff in any way.

It is also claimed in the complaint that in the operation of its road the defendant unnecessarily allows its cars to stand upon and obstruct the private ways or crossings of the plaintiff. There is no evidence in this case that the defendant unnecessarily obstructs the crossings or allows its cars to stand upon the main tracks, the switch, or siding an unnecessary length of time. Some delays have been had there, it appears, as I assume there have been at every other grade crossing in the state of New York; but there is no testimony that the defendant has unnecessarily allowed its cars or trains to obstruct the crossings,

106 N.Y.S.—25

or obstructed them in any way except as it did in the ordinary and natural use of them by its trains.

Further, in connection with the siding, it is claimed that the defendant uses it for parking its cars, and that the station agent of the defendant sells coal from the cars of the defendant on the siding. The plaintiff's husband has his coal bins or coal sheds adjacent to and adjoining the siding, and is continually receiving coal therefrom, which is shoveled direct from cars to bins. These bins are partly on plaintiff's lands and partly on defendant's right of way. It is one method of loading and unloading the defendant's cars which have to be loaded or unloaded for Milton patrons somewhere upon this right of way, and I cannot see that it requires any extra grant for that purpose, or that the placing of this siding puts any burden upon the plaintiff's land which would not have been in contemplation of the parties and commissioners at the time of the condemnation proceeding.

Upon the east side of the defendant's right of way, a few feet west from the west line of plaintiff's dock, near the storehouse, and between said west line and its north or west-bound track, the defendant and its predecessor have erected and maintained ever since shortly after the construction of its railroad a wooden platform, called in this case a "fruit platform," upon which fruit is received in season and placed upon the north or west-bound cars of the defendant, and mostly sent via Albany to Boston by the National Express Company by means of the defendant's cars. To get to this platform the persons desiring to send fruit in such manner go upon a portion of the dock of the plaintiff. She contends that this is placing an unreasonable burden upon the right of way; that the wagons and teams carrying fruit to this platform interfere with the use of plaintiff's dock, and interfere with the customers of the steamboats that stop there; and that it should be removed, or its use restrained by an injunction, and damages allowed for past injury to her. It is difficult to see why this should be done. The plaintiff has it in her own power, as was admitted by her husband and agent on the stand, by the erection of a fence—a short fence, a few feet along and in front of this fruit platform, and upon the line between herself and the defendant—to prevent entirely this use by any person of this platform; at least, preventing them from going upon her land to get upon the land of the defendant. This would not at all interfere with the use of her own land, as the fence would not interfere with her approach to her dock in any way, as it would not be upon either of her private crossings. She can also stop any unauthorized person coming on her dock that she chooses to. The defendant does not own these teams and wagons which bring this fruit to the platform, and it would seem that the plaintiff has her remedy against those parties who thus trespass on her premises, and not against the railroad company which permits them to use this platform. The plaintiff's agent and son have also used this platform in their own business. It does not appear that the plaintiff has ever forbidden its use by the fruit growers, nor by the defendant or its predecessor. The platform itself is an erection in the line of facilitating the defendant's business. It is but a short distance across the two tracks over the roadway constructed by defendant between the east or south-bound track and the

siding, and this court cannot say that if the plaintiff should erect the fence suggested, or in any way restrain the fruit growers going upon her lands to reach said platform, the defendant could not use this platform from its said roadway which it has constructed. The right to use this land for railway purposes was granted to the defendant under the condemnation proceedings. The erection of this platform is plainly in the line of the defendant's work as a forwarder of fruit, and the fact that the defendant and its predecessor would forward freight of various kinds, of course, was in the minds of the commissioners when the award was made in the condemnation proceedings. This precise method may not have been, and probably was not; but it is simply a platform erected upon the right of way for the purpose of temporarily placing freight until the cars come along to take it, and I cannot see in any manner how it is an improper use of the right of way by the defendant.

At the time the railroad was constructed and for some time thereafter the defendant used a wooden sluiceway upon the north side of the highway, underneath its tracks, crossing from the western portion to the eastern portion thereof, for the purpose of permitting the surface water that came down along the north side of the highway and the westerly side of the tracks to escape to the eastern side of its tracks and the north side of the highway, and eventually find its way into the river, to prevent a dangerous crossing at this place, and also to protect the defendant's tracks. About 1900, the wooden sluiceway having become out of repair or broken, it was replaced by an iron pipe, and it performs substantially the same purpose. It is a drain alongside of the highway, which has been in use for many years. The plaintiff claims that the water thus turned loose upon her dock is an inconvenience to those using the Mary Powell dock and some of her buildings on her said dock property. I do not think that the iron drain pipe would impose any additional burden on the property; nor do I think that the railroad permitting the water from one side of the track to escape to the other side alongside of the highway created an actionable nuisance, for which it can be held in damages.

The interest of a railroad company in land acquired by it for railroad purposes has been defined to be as follows:

"The interest of the defendant in this strip of land was a permanent easement for the uses and purposes of its railroad. Heard v. City of Brooklyn, 60 N. Y. 242; Miner v. N. Y. C. & H. R. R. Co., 123 N. Y. 242, 25 N. E. 339; Weston v. Foster, 7 Metc. 297; Proprietors of Locks, etc., v. N. & L. Railroad Co., 104 Mass. 1, 6 Am. Rep. 181. While this easement exists, the defendant is entitled to the exclusive use, possession, and control of the land; and the owner of the fee has no right to use, occupy, or interfere with the same in any manner whatever. Under the general laws of the state railroad corporations are bound to keep their tracks guarded and protected by fences and cattle guards, and there is no right of crossing by the owners of adjoining property, except at farm crossings, to be built for the use of adjoining farm owners. While it has been held in some cases that the owner of the fee, subject to the railroad easement, has some right to use the land taken, not inconsistent with the easement, the better view of the law, supported by the greater weight of authority, is that the use of the railroad company while the easement exists is exclusive of the owner of the fee. Pierce on Railroads, 159. 160, and cases cited; Mills on Eminent Domain, § 208; Hazen v. B. & M. Railroad Company, 2 Gray (Mass.) 574; Munger v. Tonawanda R. R. Co.,

4 N. Y. 349, 53 Am. Dec. 384." Roby v. N. Y. C. & H. R. R. Co., 142 N. Y. 176, 36 N. E. 1053.

"Where land is taken for a right of way for a railroad, the company may make any use of the land which, directly or indirectly, contributes to the safe, economical, and efficient operation of the road, and which does not interfere with the rights of property pertaining to the adjacent lands. The company may place its tracks on any part of the right of way, and may change their location at pleasure. It may lay additional tracks—switch and side tracks—as it may deem necessary and proper. It may construct its roadbed in any way it pleases, and change the mode of construction at any time, provided, always, that it does not interfere with the rights of adjoining proprietors. * * * A railroad company may place upon its right of way all such buildings and structures as are necessary and proper to facilitate the business of the company, such as depots, freight houses, elevators, coal sheds, turntables, water tanks, etc." 2 Lewis on Eminent Domain (2d Ed.) § 584.

I conclude, then, that a railroad company has the first right to use its right of way acquired by condemnation proceedings for the purposes of its railroad; that it may make such reasonable changes therein from time to time as may seem necessary in its tracks for the advantageous use of its property, and as its growing needs and the change of commerce may dictate; also that, where an adjoining owner exercises the right upon certain defined crossings to pass and repass for himself, his tenants, and patrons over the said right of way, no cause of action accrues to said adjoining owner by reason of slight alterations of the grade of the tracks and roadway of the railroad company, nor such small changes in the surface of the right of way as have been made by the defendant here; and that neither defendant nor its predecessor in title have placed any appreciable additional burdens upon the real estate in question since the original construction of defendant's railroad.

It follows, therefore, that no recovery can be had in this case, and judgment is ordered for the defendant, with costs.