[No. 11672.  Department One.  June 6, 1914.]

A. NEITZEL et al., *Appellants*, v. SPOKANE INTERNATIONAL
RAILWAY COMPANY et al., *Respondents*.[1]

EMINENT DOMAIN—RIGHT OF WAY—REVERSION—ABANDONMENT—
INTENTION—EVIDENCE—SUFFICIENCY. The evidence sustains a finding
that a railway company had not abandoned a portion of its right of
way and terminal grounds, condemned in anticipation of future
needs, by leasing the same for a nominal sum to a wholesale con-
cern for a warehouse, in return for an agreement for business, for
the term of fifteen years with privilege of a ten-year renewal, where,
pending trial, the lease was changed to shorten the term and give
the company the right to terminate the lease on one year's notice,
directors of the company testified that the company did not intend
to abandon its easement, and the evidence was to the effect that all
the grounds would soon be needed for and put to public uses of the
company, and that the handling of freight was economized and the
business of the railroad increased by the use of the buildings of the
lessee.

SAME—RIGHT OF WAY—REVERSION—ABANDONMENT—MISUSE.  A
private use of a part of the terminal grounds of a railroad company
by a wholesale concern for a warehouse, under a lease for nominal
rent, upon an agreement to give the road all the lessee's business,
does not work a reversion, when there was no abandonment of the
easement; there being no reversion by misuse without abandonment,
so long as the private use is incidental or contributed to the com-
pany's transportation business.

SAME—RIGHT OF WAY—REVERSION—ACTIONS—EVIDENCE OF IN-
TENT—ADMISSIBILITY.  In an action to declare a reversion of ter-
minals, condemned for railroad purposes, which the company had
leased for a warehouse, for nominal rent upon an agreement for all
of the lessee's business, evidence that warehouses upon terminal
grounds reduced the cost of unloading freight is admissible on the
question whether the company in making the lease intended to
abandon the easement.

SAME.  In such a case, evidence that the lease was to obtain the
business, and that it was worth $20,000 a year, is admissible upon
the question whether the making of the lease showed an intent to
abandon the easement.

SAME.  In such a case, the cancellation of a lease pending trial,
and the execution of another for a shorter term, giving the company

[1]Reported in 141 Pac. 186.

the right to terminate it on one year's notice, is admissible as a circumstance upon the question of intent.

SAME—INSTRUCTIONS.    Instructions in such a case summarized, and held to correctly state the law of the case.

NEW TRIAL—MISCONDUCT OF COUNSEL—ARGUMENT.    A new trial should not be granted for misconduct of counsel in argument to the jury, merely for making statements and drawing deductions not fully warranted by the record, it being presumed, when there was no grave abuse of privilege, that the jury determined the case on the evidence.

CONSTITUTIONAL LAW—DUE PROCESS—USE OF CONDEMNED PROPERTY.    The condemnation of property for a railroad right of way and terminals, not presently needed or devoted to a public use, is not a taking without due process of law, where there has been no abandonment of the easement.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered June 23, 1913, upon the verdict of a jury rendered in favor of the defendants, in an action of ejectment.    Affirmed.

*Joseph Rosslow, J. O. Bailey,* and *E. B. Hoffman,* for appellants.

*Cannon, Ferris & Swan* and *Allen & Allen,* for respondents.

GOSE, J.—This action was brought to recover the possession of two lots in Spokane, for damages for withholding possession, and to have the eminent domain proceedings by which the railroad company acquired title to the lots held null and void because of fraud practiced upon the court in the proceedings.    The complaint alleges that the railway company at all times intended to, and has, used the lots for private warehouse sites, and that it never intended to use them for a public use.    A demurrer to the complaint was sustained and, upon appeal, the judgment was reversed.    *Neitzel v. Spokane International R. Co.,* 65 Wash. 100, 117 Pac. 864, 36 L. R. A. (N. S.) 522.    Upon the filing of the remittitur below, issue was joined on the questions of fraud, private use, and abandonment of the easement.    In support of their de-

mand for a jury trial, the plaintiffs waived the charge of fraud in the eminent domain proceedings. The case was thereupon tried to a jury, resulting in a verdict and judgment for the defendants. The plaintiffs have appealed.

Upon the former appeal, we held (a) that the complaint states a cause of action upon the facts alleged arising since the entry of the judgment in the condemnation proceeding; (b) that the railway company acquired, by the eminent domain proceeding, "a qualified fee or an easement" for a "public use;" (c) "before a reversion will be awarded, it must be made to appear that the condemning corporation has *finally and positively* abandoned the application of the property to the public use, and *does not intend to restore it;*" (d) that the railroad company may plead and show that it has not "permanently abandoned the lots to a private use;" (e) that the respondent Benham & Griffith Company is using the property for a private use.

The first contention is that the verdict of the jury is not supported by the evidence. It is argued that the undisputed facts establish an abandonment of the easement for public purposes. The material facts touching this question are these: In 1906, the railway company leased to the respondent Benham & Griffith Company, a corporation, at a nominal rental, a portion of its terminal grounds, including the lots in controversy, for a term of fifteen years, with an option of renewal for ten years. The lessee was required to, and did, construct a two-story brick building upon the leased premises. It agreed in the lease to route all its business over the railway company's road. The respondent Benham & Griffith Company conducts a wholesale grocery business in the building. After the filing of the opinion on the former appeal, the lease was canceled by mutual agreement, and a new lease was entered into for a term of ten years with an option of renewal for a like period. This lease provides that the railway company may terminate the lease if it shall need or desire to use the premises during the term of the lease or

the renewal thereof, by giving one year's notice. The railway company, between October, 1906, and May, 1909, made a number of other leases of portions of its terminal grounds for a term of ten years, with the privilege of renewing for a like term, and one lease for twenty years with a right to renew for the same period. These leases, also, provided that the lessees would route their freight over the respondent's line of road. Substantial structures were erected upon the premises covered by these leases, and the property was used for wholesale houses. All the property covered by the leases was acquired by purchase, except the two lots in controversy and one other.

Two of the directors of the railway company testified, that the company did not intend to abandon its easement for a public use; that it had an arrangement with the Oregon & Washington Railway Company for a joint user of its terminals under which it was temporarily operating, and that, in the near future, it expected to devote all the terminal grounds to a public use; that the company would soon need all its grounds and "a great deal more." Mr. Corbin, the president of the railway company, testified that he anticipated future needs when he was acquiring terminal grounds; that, before acquiring the property in controversy, the railway company acquired by purchase a tract of ground for terminals subject to a fifteen-year lease, which lease it would have been expensive to condemn, and that, because of that lease and a stringency in the money market and in order to get business for the company, it was thought advisable to make the leases to which we have referred. Representatives of other railroads with large experience testified that the respondent's entire terminal grounds were inadequate to handle the prospective business of the company. The general superintendent of the railway company said, that the entire terminal grounds would be needed "long before the lease has expired;" that the company needed team tracks, freight

2—80 WASH.

sheds, and a passenger depot; that the present freight house was inadequate, and that the building upon the lots in controversy could be used for a freight warehouse "without tearing it down." It was further shown that the handling of the freight was economized by the construction and use of these buildings. Upon these facts, the jury was warranted in finding that the railway company had not "finally and positively abandoned the application of the property to a public use."

A public service corporation may anticipate future needs, and mere nonuser of a portion of its easement does not, of itself, constitute an abandonment. Whether or not there has been an abandonment depends upon the intention of the owner of the easement. While such intention may be deduced from long nonuser, the nonuse itself does not constitute an abandonment, and does not of itself defeat or impair acquired rights. *Nicomen Boom Co. v. North Shore Boom & Driving Co.*, 40 Wash. 315, 82 Pac. 412; *Conabeer v. New York & H. R. Co.*, 156 N. Y. 474, 51 N. E. 402; *Pittsburgh, Ft. W. & C. Ry. v. Peet*, 152 Pa. St. 488, 25 Atl. 612, 19 L. R. A. 467. The same principle applies to a misuser. "A misuser, however great the perversion, is not an abandonment." *Proprietors etc. v. Nashua & L. R. Co.*, 104 Mass. 1, 6 Am. Rep. 681.

At the close of the case, the appellants moved for a directed verdict against the respondent Benham & Griffith Company, for the recovery of the possession of the property as against it, for damages, and for an injunction against a further misuser. The motion was denied, and this ruling is assigned as error. In view of the fact that the jury has found that there has been no abandonment of the easement, and that the railway company intends to devote the property to a public use as soon as public necessity requires, we think there can be no sound distinction between a nonuser and a misuser, so long as the use to which the property is put, although a private use, is incidental to the company's business as a transportation company. There has been no reversion

until there has been an abandonment. This view finds support in the following authorities: *Roby v. New York Cent. & H. R. R. Co.*, 142 N. Y. 176, 36 N. E. 1053; *Peirce v. Boston & L. R. R.*, 141 Mass. 481, 6 N. E. 96; *Grand Trunk R. Co. v. Richardson*, 91 U. S. 454; *Western Union Tel. Co. v. Rich*, 19 Kan. 517, 27 Am. Rep. 159; *Townsend v. New York Cent. & H. R. R. Co.*, 56 Misc. Rep. 253, 106 N. Y. Supp. 381; *Danville & W. R. Co. v. Lybrook*, 111 Va. 623, 69 S. E. 1066, Ann. Cas. 1912 A. 175; *Dillon v. Kansas City, Ft. S. & M. R. Co.*, 67 Kan. 687, 74 Pac. 251; *Illinois Cent. R. Co. v. Wathen*, 17 Ill. App. 582; *Abraham v. Oregon & C. R. Co.*, 41 Ore. 550, 69 Pac. 653; *Railroad v. French*, 100 Tenn. 209, 43 S. W. 771, 66 Am. St. 752; *Michigan Cent. R. Co. v. Bullard*, 120 Mich. 416, 79 N. W. 635; *State v. Baltimore & Ohio R. Co.*, 48 Md. 49.

In *Roby v. New York Cent. & H. R. R. Co.*, *supra*, the railway company had leased a portion of its terminal ground which it had acquired by condemnation proceedings, for a term of fifteen years, subject to the right of the company to terminate the lease upon giving six months' notice. The lease provided that the lands should be used for a coal yard and trestles for the purpose of receiving and handling coal transported over the company's road. An action was prosecuted by the owner of the fee to recover possession upon the ground of an alleged abandonment. In denying relief, the court said:

"While it has been held in some cases that the owner of the fee, subject to the railroad easement, has some right to use the land taken, not inconsistent with the easement, the better view of the law, supported by the greater weight of authority, is that the use of the railroad company while the easement exists is exclusive of the owner of the fee. (Pierce on Railroads, 159, 160, and cases cited; Mills on Eminent Domain, § 208; *Hazen v. B. & M. Railroad Company*, 2 Gray 574; *Munger v. Tonawanda R. R. Co.*, 4 N. Y. 349.) . . . An easement may be abandoned by unequivocal acts showing a clear intention to abandon, or by mere non-user,

if continued for a long time. The mere use of the easement for a purpose not authorized, the excessive use or misuse, or the temporary abandonment thereof, are not of themselves sufficient to constitute an abandonment. (Washburn on Easements, 2d ed. 631, *et seq.* and cases cited; *Hoggatt v. Railroad Company*, 34 La. An. 624; *Curran v. City of Louisville*, 83 Ken. 628; *Proprietors of Locks, etc., v. N. & L. R. R. Co.*, 104 Mass. 1; *White's Bank of Buffalo v. Nichols*, 64 N. Y. 65; *Crain v. Fox*, 16 Barb. 184; *Snell v. Levitt*, 110 N. Y. 595.)"

In *Peirce v. Boston & L. R. R.,* the depot master was given the use of a garden, a stable, and a part of a building upon the station grounds not used for depot purposes. He gave his services and a cash rental for these privileges. Action was prosecuted by the owner of the fee. In denying relief, the court said:

"No occupation of land taken for depot and station purposes, which is not inconsistent with its use for such purposes, can be evidence of a claim to the fee; and any occupation of it which is concurrent with and does not exclude its occupation for station purposes must be presumed to be under that right. The manner in which it shall be used for the designated purposes is in the discretion of the corporation, and is no concern of the landowner. Even if the corporation exceeds its franchise in the manner of such occupancy, it does not thereby disseise the owner of the fee. . . . The whole demanded premises were occupied as the station, and furnishing food, lodging, horse-keeping, and horse-hire; and allowing buildings upon it to be used for a boarding-house and a stable, and some of the land to be cultivated, all for the convenience of its passengers and others, in order to increase the business of the road, were incident to its business as a passenger carrier, and consistent with its occupation for the purposes for which it was taken, and with a claim to occupy for those purposes."

In *Danville & W. R. Co. v. Lybrook*, it is said:

"Of course, as the opinion in that case holds, a railroad is required, under all circumstances, to do what may be reasonably necessary and suitable for the accommodation of pass-

engers and shippers, but it is under no obligation to refrain from using its property to the best advantage of the public and itself."

The *Dillon* case was an action by the owner of the fee for possession and damages. After condemning the land for catching and storing surface water for use in operating its engines, the defendant put the land to the use for which it had been condemned, and leased it to a fishing and boating club for a period of five years, subject to termination at the option of the defendant by giving thirty days' notice. Upon the plaintiff's appeal, it was held that "there can be no concurrent occupancy of railroad property in actual use by it in the operation of its business without its consent." In *Abraham v. Oregon & C. R. Co.*, *supra*, the company leased a portion of its easement "for eating house and hotel purposes," for the use and accommodation of its passengers and employees. In an action to enjoin such use, the court said:

"The courts cannot undertake to draw any nice distinction, or apply any arbitrary test, to determine the necessity of establishing or maintaining such places of entertainment by railway companies, and so long as it appears that they are not wholly foreign to the business of the corporation, the courts will not interfere with them."

In *Railroad v. French*, it was held that the use of a portion of the right of way by the owner of the fee for any legitimate purpose was not adverse to the road easement, and that the company could resume full possession and control at any time its necessities required it to do so. In *Michigan Cent. R. Co. v. Bullard*, it was held that a lease subject to termination in sixty days, made by a railroad company of a portion of its right of way to a manufacturing company, with a view to affording facilities for furnishing freight to the company, was not invalid. *Gurney v. Minneapolis Union Elevator Co.*, 63 Minn. 70, 65 N. W. 136, 30 L. R. A. 534, was an action by an owner of the fee to recover the possession of a portion of a railroad right of way and the rents and profits. The

defendant had constructed and was operating a public grain elevator upon the premises sought to be recovered, under a license from the railroad company. It was held that such use was in aid of the public purposes for which the land had been acquired.

A railway company has the right to the exclusive possession of the land condemned, in the absence of a limitation in the statute or in the decree, until there has been an abandonment of the easement. *Railway v. Combs*, 51 Ark. 324, 11 S. W. 418; *New York & N. E. R. Co. v. Comstock*, 60 Conn. 200, 22 Atl. 511; *Brainard v. Clapp*, 10 Cush. 6, 57 Am. Dec. 74; *Hopkins v. Chicago, St. P., M. & O. R. Co.*, 76 Minn. 70, 78 N. W. 969.

The appellants argue that, where there has been a misuse or an excessive use of the easement, the owner of the fee is entitled to a judgment declaring his ownership of the fee subject to the easement and for damages for the wrongful use; citing *Proprietors etc. v. Nashua & L. R. Co.*, 104 Mass. 1; *Chicago, R. I. & G. R. Co. v. Clark* (Tex. Civ. App.), 146 S. W. 989; *Lyon v. McDonald*, 78 Tex. 71, 14 S. W. 261, 9 L. R. A. 295; *Strong v. Brooklyn*, 68 N. Y. 1; *Ayer v. Phillips*, 69 Me. 50. These cases support their contention. The appellants have also cited a number of street cases. Such cases are not analogous, because the owner of a fee in a street may use the street for any purpose not inconsistent with the easement; whereas, the easement of a railroad company is, in its very nature, exclusive and there can be no concurrent occupancy without the consent of the company.

The question is an open one in this state, and we think the better view is that, until the intention to apply the property to a public use has been abandoned, there can be no reversion and no disseizin, and hence no right of action, so long as the property is applied to a use incidental to, or which contributes to, the public business of the transportation company. Moreover, we think this is a just rule, because it is well known

that, in eminent domain proceedings, the owner receives full compensation for his property.

The respondents were permitted to ask the general superintendent of the railway company whether wholesale houses and warehouses were necessary for the building up of the railroad business. Upon objection, the court permitted the witness to answer, stating that it was admitted only for the purpose of throwing light on the question as to whether, in making the lease, the company intended to abandon its easement. The witness answered that warehouses upon terminal grounds reduced the cost of unloading the freight. As thus limited, there was no prejudicial error in the ruling.

Mr. Corbin, the respondent's president, after testifying that, when he executed the Benham & Griffith lease on behalf of his company, he had no intention of abandoning the property for a public use, and after saying that, looking to the future, the company needed the property for its terminals because the population doubles every ten years and because the business of the company was increasing, was asked whether other railroads would have taken the property if his company had not, and answered that the Great Northern Railway Company attempted to take it after finding that his company was acquiring it for terminal grounds. The court admitted the testimony as bearing on the question of intention to abandon. This is assigned as error. While we think it throws little or no light on the question of intention, and that it would not have been error to exclude it, and that it probably should have been excluded, the error, if any, is too slight to justify a reversal. *Chicago, Milwaukee & P. S. R. Co. v. True*, 62 Wash. 646, 114 Pac. 515.

The same witness testified that the company will need the property sooner than he anticipated when the lease was made. He was then asked his reason for making the lease, and answered that it was to get revenue for the new road while it was establishing a business; that it gave the company business which it would not have otherwise obtained. He was then

permitted to state that the revenue derived from the Benham & Griffith business was approximately $20,000 a year. This testimony was also admitted as reflective of the intention of the company. We think it was a circumstance tending to aid the jury in determining whether the making of the lease showed an intention to abandon the property. *Anderson v. Interstate Mfg. Co.*, 152 Iowa 455, 132 N. W. 812, 36 L. R. A. (N. S.) 512.

After the filing of the opinion on the first trial, the respondents, by mutual agreement, canceled the lease, and a new lease was executed for a term of ten years, with an option to renew for a like period, subject to termination if the respondent should need or desire to use the premises during the term of the lease or the renewal thereof, by giving one year's notice. The admission of the second lease in evidence is assigned as error. It was clearly admissible as a circumstance upon the question of intention.

The appellants assign error in the refusal of the court to give certain requested instructions. We cannot discuss the assignments, either separately or collectively, without unnecessarily extending the opinion. We pass them with the remark that the instructions given cover the ultimate facts to be determined by the jury.

The court instructed the jury, in substance, that the questions for them to determine were whether or not the respondent had abandoned the property involved in the suit for railroad purposes, and if so, the amount of damages the appellants should recover; that the appellants were the owners in fee simple of the property; that the respondent corporation acquired only an easement by condemnation; that the term easement means the right to use the land for a public purpose; that, if the easement had been abandoned, the appellants were entitled to recover possession; that the use to which Benham & Griffith was putting the land was private; that, if the jury found that respondent intended to permanently devote the land "to the use to which it is now put,"

the verdict should be for the appellants; that the lapse of
time does not, of itself, constitute an abandonment, but is a
circumstance for the jury to consider in arriving at the in-
tention of the respondent; that an intention to abandon
property for which one has paid value will not be presumed,
and that if a railway company condemns land for future use,
land which it does not need at the time, the nonuser of a por-
tion for private purposes is not an abandonment.   The court
further instructed that the respondent, in acquiring lands
for terminal grounds, had a right to anticipate future needs,
and that it was not restricted to acquiring only such land as
it absolutely needed at the time it condemned it; that it might
acquire such land as it might reasonably anticipate it would
need in the future; and that, in arriving at the intention of
the respondent to abandon the land for a public use, the jury
should consider all the facts as disclosed by the testimony
relating to the lease to respondent Benham & Griffith, the
use to which the property was being put, the nature of the
buildings on the land, and the leases to other persons of por-
tions of the right of way, and all other facts and circum-
stances disclosed by the testimony.   The court further in-
structed that the misuse of an easement is not in itself an
abandonment, and that the burden was upon the appellants
to show, by a preponderance of the evidence, that the respond-
ent "has finally and positively abandoned the application of
the property to the public use and does not intend to restore
it."   The instructions announce correct legal principles, and
are in harmony with the law of the case as determined on the
former appeal.

Counsel for the respondent, in his opening statement, said
that, when the respondent began acquiring its right of way,
the Great Northern Railway Company became an active com-
petitor for the property in order to embarrass the respond-
ent, and that the property owners raised prices so that it
became necessary to condemn the property in controversy.
During the progress of the trial, counsel for the respondent

called a member of the legal department of the Great Northern Railway Company to the witness stand and asked him if he was interested in the case. An objection was thereupon interposed and sustained. In the course of his address to the jury, counsel for the respondent said: "Since the Great Northern attorney went back home, since we caught him at it." He also referred to the fact that the complaint charged that there was fraud in the eminent domain proceedings; that the appellants got into court on an allegation of fraud, and after this court had said that the respondent ought to answer, the appellants abandoned the charge. It is argued, upon the facts stated, that counsel for the respondent was guilty of such misconduct as to render the granting of a new trial imperative. We held to the contrary upon similar facts in *Chicago, Milwaukee & P. S. R. Co. v. True, supra.* If a new trial were granted for every departure from the record committed on the firing line in hotly contested cases, such cases would never end. The zeal of counsel often leads them, in the heat of debate, to make statements and to draw deductions not fully warranted by the record, and, except in cases of grave abuse of privilege, it must be presumed that the jury heeded the admonition of the court and determined the case upon the evidence.

The last contention is that the appellants' property is being taken without due process of law and in contravention of the fourteenth amendment of the Federal constitution. The answer to this contention is that an easement in their property was taken and full compensation rendered in the condemnation proceeding in 1905, and that the jury, upon all the facts, has found that there had been no abandonment of the easement.

Affirmed.

CROW, C. J., MAIN, ELLIS, and CHADWICK, JJ., concur.