# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

DANVILLE AND WESTERN RAILWAY CO. v. LYBROOK AND OTHERS.

January 12, 1911.

Absent, Harrison, J.

1. PUBLIC SERVICE CORPORATIONS—*Use of Their Own Property—Control.*—Courts will only control public service and other corporations in the use of their property so far as may be necessary to secure the proper discharge of the duties which the corporations owe to individuals, or to the public.

2. RAILROADS—*Storage and Delivery of Freight—Use of Its Grounds—Rights of Public.*—A railroad company having the right to build on its premises structures for the storage and delivery of freight, or for the conduct of a business which facilitates the handling of freight, may permit others to erect such structures so long as it fairly discharges its duty to shippers without discrimination. When this is the case, the company has denied no right to its patrons or the public.

3. RAILROADS—*Use of Grounds for Storage—Rights · of Public.*—A railroad company is required, under all circumstances, to do what may be reasonably necessary and suitable for the accommodation of passengers and shippers, but it is under no obligation to refrain from using its property to the best advantage of the public and itself. One who wishes to use railroad property for storage or any other use not a railroad use cannot complain that others are permitted to use the railroad property for their private business, so long as sufficient railroad facilities are furnished by the company.

4. CARRIERS—*Powers of State Corporation Commission—Limitation of Powers—Removing Inconveniences.*—The control of the State Corporation Commission over common carriers and other public service corporations is subject to certain well defined constitutional and statutory limitations. Neither the Commission nor the courts can undertake to remove individual inconveniences, such as are mentioned in paragraph 2 above, so long as the carrier or public service corporation affords reasonable facilities

for the reception and delivery of freight for the general public, and denies no individual or individuals an essential right.

Appeal from State Corporation Commission.

*Reversed.*

The opinion states the case.

*Eugene Withers* and *John K. Graves*, for the appellant.

*John W. Carter*, for the appellees.

CARDWELL, J., delivered the opinion of the court.

This appeal brings under review an order of the State Corporation Commission, entered on the 21st day of April, 1909, upon a petition filed by S. M. Lybrook and seven others, asking that the Danville and Western Railway Company be required to remove certain buildings, etc., from its grounds at Stuart, Patrick county, Virginia, and to place the depot yards and side tracks of the defendant company at Stuart in proper condition for the receipt and handling of freight, etc. The proceedings were had upon the petition, the answer and exhibits therewith filed by the defendant company and the evidence of certain witnesses examined before the Commission at Richmond; whereupon the order was entered, requiring and directing the defendant company to remove or cause to be removed, within sixty days from the date of the order, certain buildings designated upon a map filed with the petition as Nos. 2, 3, 4, 5, 6 and 7, and certain platform scales designated as Nos. 8, 9 and 10, and from that order the defendant company takes this appeal.

The petition of appellees alleged that appellant had permitted the erection of certain buildings on its right of way and depot grounds at Stuart, "to the exclusion of the public

and to the great inconvenience of the reception and delivery of freight to and from the patrons of the road; that these commercial houses or buildings interfered with the loading and unloading of freight on and from cars; that the patrons of the road were hindered and obstructed thereby, to their inconvenience and loss of time and money; that the buildings, or certain of them, so erected and complained of, contracted the space intended for depot grounds at Stuart; and that the petitioners themselves were hampered and interfered with in their receipt and delivery of freight by reason of these buildings located near the railroad tracks. It is further alleged that the lands upon which the buildings complained of are located were obtained during the pendency of certain condemnation proceedings by an agreement between appellant's predecessor and A. M. Lybrook, trustee, and others, on the 6th day of June, 1885.

Of the buildings complained of, Nos. 2, 3, 4 and 5 are located upon the right of way of appellant, while the buildings Nos. 6 and 7 and the platform or wagon scales are located upon what is designated in the petition as the "depot grounds" of the appellant, and styled on the maps and in the answer of the appellant and in the evidence as "Area A." Both the right of way and "Area A" were acquired by the Danville and New River Narrow Gauge Railroad Co., of which the appellant is successor in title, during the pendency of certain condemnation proceedings in the county court of Patrick county, and it appears that after the report of certain commissioners appointed by the court for the purpose of ascertaining the value of the lands sought to be taken, an agreement was, on the 6th day of June, 1885, entered into between A. M. Lybrook, in his own right and as trustee for his wife, and her children, whereby the Danville and New River, &c., Railroad Co. acquired from the said Lybrook, in his own right and as such trustee, an 80-foot right-of-way at Stuart, and "Area A"

for depot purposes, which agreement was confirmed by an order of the court entered at the July term, 1885, which order did not adjudicate the right of appellant's predecessor in title to acquire the land by condemnation, and did not vest the title in appellant's predecessor by virtue of the condemnation proceedings, but merely confirmed the agreement by which Lybrook, in his own right and as trustee, agreed to the conveyance of the property by the court to the Danville and New River, &c., Railroad Co., appellant's predecessor.

With the strip of land 55 feet wide and 800 feet long parallel to appellant's right-of-way at Stuart, acquired by appellant from J. A. White, trustee, *et al.*, by conveyance of date March 27, 1905, we are not especially concerned; nor do we, in the view we take of the case upon the facts proved, attach any importance to the question, whether or not appellant's predecessor in title acquired the original right of way of the railroad and the lot for a depot by condemnation or purchase.

The charter of the appellant's predecessor, approved March 20, 1873 (Acts 1872-3, pp. 260-2), and as amended (Acts 1881-2, pp. 257-8), plainly vested in the company thereby chartered the right to acquire, by subscription *or otherwise*, lands, etc., needed for the successful operation of its road, and to lease, sell, etc., any and all lands, etc., acquired by authority of section 4 of said act, as amended. Be that, however, as it may, appellant admits, and rightly, that it has no right to erect, or permit the erection of, upon its right of way at Stuart, any structures that hinder or interfere with it in the reasonable performance of its duties as a common carrier.

It will be observed that this proceeding was not instituted by the former owners of the station grounds and right of way of appellant at Stuart, nor by any one claiming under said former owners, but by eight shippers, who allege that

they and the public are inconvenienced, hampered and interfered with in the reception and delivery of freight.

The appellant owns four contiguous parcels of land at Stuart, acquired for right of way and for depot and other terminal purposes, aggregating four and one-half acres, and the space or area occupied by the buildings and scales complained of aggregates 4,727 square feet, or 1/40 of this total area. These buildings and scales were erected and are being used by patrons of the appellant as a convenience to the public and were intended to facilitate the delivery of freight shipped to and from Stuart, and are a convenience and not a hindrance to the public in shipping from and receiving freight at Stuart, as we shall presently see. Those occupying or using these buildings and scales are occupying or using them by sufferance only, and pay no rent therefor to appellant, and all goods, merchandise, etc., stored or handled in these buildings are either shipped to or from Stuart over appellant's line of railway, and the land of appellant designated as "Area A" or depot grounds, not occupied by any of said buildings or the scales, is used as a camping ground for shippers delivering or receiving freight at Stuart, of which no complaint is made. Of the eight signers of the petition asking that these buildings and wagon scales be removed, only three of them testify in these proceedings.

S. M. Lybrook, appellees' leading witness, testifies that "Area A," on which these structures are located, has been used for standing, i. e., parking, wagons and as a camping ground for wagons coming from the country ever since the road was built, and admits that the building No. 6, used as a wholesale store, is over a ravine, that its supports on the north and east sides are in the ravine and just beyond the edge of it on the west side, and to the front there is a platform covering the ravine, to enable the public to cross from the main road to Stuart to the Mt. Airy road; that the buildings in question in no wise obstruct the space between

No. 6 and the depot; and that the removal of No. 6 would not facilitate the public except in clearing the ground it takes up, which ground he had already shown to be practically a ravine and of no use to the public. He in effect further admits that the complaint was only made after building No. 6 was put up; that appellant had never been asked to cover the ravine over which it stands and thereby afford witness and others more space; and that the complaint was made although the ground covered by the building was not usable as vacant ground for any purpose by appellant's patrons. As to the scales (Nos. 8, 9 and 10), the witness admits that they furnish the only facilities at Stuart for weighing tan bark; that tan bark must be weighed before shipment; that there is no other place at which the scales could be put; that the weighing is without charge; and that he has used one or more of these scales without charge. He further states that notwithstanding the buildings complained of on "Area A" there is no difficulty of approach for wagons to get their freight, and, in short, the witness says that the only way the buildings in question interfere with shippers is to cut off their privilege of using the area they occupy as a camping ground, i. e., that the shippers are thereby deprived of a place to camp their wagons and feed their horses, but he does not state, nor is it stated by any other witness, that appellant had been requested to remove the campers from its right of way or terminals; nor does the witness or any other witness show wherein the appellant was required to furnish camping ground upon its right of way or terminals to accommodate shippers, although it had been doing so ever since the railroad was built. It is not claimed by this witness that the buildings or scales on Nos. 6, 7, 8, 9 or 10 inconvenience him or any of the petitioners or any patron of the railroad, other than those who seek to camp on "Area A" for convenience, or are seeking peculiar privileges in the matter of receiving or delivering freight.

T. J. George, another of the petitioners examined as a witness for appellees, when asked whether or not the buildings or scales on Nos. 6, 7, 8, 9 and 10 contract the space and are an inconvenience to the public for the purpose of bringing freight or carrying freight away, answered: "Well, Moir's building is over the branch. It may take a little space on each side, and also the Clark Bros.' building is right behind the Moir building." Yet the witness, on cross-examination, admits that the scales on Nos. 8, 9 and 10 are used by the public "for weighing tan bark and other stuff;" that none of the buildings interfere with him; and after admitting that he and Moir are competitors in business, his objection is to Moir's occupying any of appellant's land while competing with people, like himself, who own real estate adjoining appellant's property, which real estate is for sale.

The sum and substance of the testimony given by R. C. Shepherd, the other signer of the petition who testified. is that no one complained of the buildings in question, and that his only complaint was that he was not allowed to erect a building on the railroad grounds, and that he objected to none of the structures until No. 6, the last but one erected, was placed over the ravine; yet he does not show that No. 6 in any way inconvenienced him or the public.

All of the evidence, particularly that of S. M. Lybrook, shows that the removal of the buildings and scales in question would not change the methods or ways of getting to the tracks of the appellant; that means of ingress and egress to the terminus of appellant at Stuart would not be affected in the least by the removal of the buildings, etc.; complained of, and almost with one accord do the witnesses who have been examined pro and con testify that no one has complained of these buildings except the petitioners.

We cannot in an opinion of reasonable length review the evidence in detail. Enough of it has been referred to, to show that this proceeding was not begun in the interest of

the general public, but merely to give vent to individual complaint, founded more upon a purpose to obtain individual benefits than to improve the service of the appellant to its patrons at Stuart. The specific complaint of the witness, Shepherd, is, that he could not get similar accommodations that others have, and other witnesses for appellees say that they have encountered inconvenience in the receipt and delivery of freight at Stuart, but utterly fail to show how the public would be the better served by appellant if the buildings, etc., complained of were removed. On the other hand the evidence unmistakably shows, that when the lay of the ground and other conditions existing at Stuart are considered, the appellant affords reasonable facilities to its patrons in the receiving and delivery of freight at that point.

The two witnesses for appellees, Hatcher and Ayers, and the only witnesses besides the three petitioners mentioned examined for appellees, corroborate the other evidence for both parties, that the seven or eight petitioners have alone complained of these buildings, Hatcher and Ayers stating positively that no one in Patrick county is complaining or ever had complained of them.

Viewing the evidence of appellees alone, it appears that the allegations of their petition are not well founded; that the structures complained of facilitate rather than hinder appellant in the performance of its duties as a common carrier, and do not interfere with its patrons or the citizens of Patrick county. Just what the evidence shows, in substance, is fairly stated by the learned chairman of the State Corporation Commission in his dissent from the ruling of the Commission, as follows:

"The platform scales referred to (used chiefly for the weighing of tan-bark) are a public convenience and no one is charged for using them; the cooper's shop is only 20 x 24 feet in size, and promotes the business of the railway company by encouraging the manufacture of barrels for the ship-

ment of the large apple crop of Patrick county over the Danville and Western Railway.

· The houses into which the fertilizer and heavy machinery have been unloaded and stored have relieved the company from the necessity of building warehouses for these purposes and from enlarging its present freight warehouse. To this extent these houses directly promote the public interest and enable the company better to discharge its public duties. This is especially true of the wholesale grocery warehouse of Moir & Co., which is built over a ravine and incommodes no shipper. This view not only is well sustained by the evidence, but also by public sentiment at Stuart, for twenty-seven merchants and shippers at Stuart say that this building of Moir & Co., is a 'great convenience' and that the place it occupies 'is over a branch' and cannot be used 'for standing wagons on or any other purpose.' (Exhibit No. 7 with defendant's answer.)"

The question is not raised, and therefore we are not called upon to consider in this opinion, whether or not, where a public corporation is charged with making a use of its property not authorized by law, a private person can sustain a suit to contest it. See *Smith* v. *Cornelius*, 41 W. Va. 59, 23 S. E. 599, 30 L. R. A. 747, and other authorities cited in Vol. 1 Va. & W. Va. Dig., pp. 1944-5.

The principle controlling in the class of cases to which this belongs is that courts will only control public service and other corporations in the use of their property so far as may be necessary to secure the proper discharge of the duties which the coporations owe to individuals or to the public.

In *Nye* v. *Stover, et al*, 168 Mass. 53, 46 N. E. 402, it is held, that "The right given a corporation to hold real estate and buildings carries with it the right to lease them, and it is no objection to the validity of such lease that the business in which the property is to be used is one which the corpora-

tion is not authorized to carry on, and that the rental is a share of the net profits."

We have seen that in this case the charter of appellant authorizes it to lease any lands acquired by the corporation by gift, purchase or otherwise, and that the buildings complained of are occupied and used by sufferance only; that they are buildings used for the storage and delivery of freight shipped to or from Stuart by appellant, or for the conduct of a business which facilitates the handling of such freight, and for the convenience of the patrons of appellant and the public. Take as an example the building used for the storage of staves and the manufacture of barrels, which were sold to the farmers of Patrick county, hauled away and filled with apples and other articles, and returned to the depot of the appellant for shipment. It is proven in this connection, not only that these staves cannot be allowed to lie out on the ground because of the injury to them that would follow their exposure to the weather, but that this storage house and the manufacture of the staves into barrels is "a great convenience" to the farmers of the county, and facilitates the business of appellant at Stuart. We are unable to find in the evidence any foundation whatever for a complaint that appellant does not provide reasonable facilities for the reception and delivery of freight at its station at Stuart.

A warehouse or other structure used for the convenience of the public is as much an auxiliary to the business of a railroad as a hotel. *State* v. *New Orleans Warehouse Co.*, 109 La. 64, 33 So. 81, in which the opinion says: "Why should this right to lease be more restricted where storage is concerned than that of a hotel? One is as useful as the other."

There can be no question that appellant has the right to build structures similar to those complained of here, and, therefore, may permit others to do so so long as it fairly discharges its duty to the shippers at Stuart without discrimina-

tion, and when this is the case it has denied its patrons or the public no right.

In *Mo. Pac. R. Co.* v. *Nebraska*, 164 U. S. 414, 41 L. Ed. 849, 17 Sup. Ct. 130, citing as authority *Grand Trunk R. Co.* v. *Richardson*, 91 U. S. 454, 23 L. Ed. 356, it is said: "A railroad corporation holds its station grounds, tracks and right of way as its private property, but for the public use for which it was incorporated; and may, at its discretion, permit them to be occupied by other parties with structures convenient for the receipt and delivery of freight upon its railroad, so long as a free and safe passage is left for the carriage of freight and passengers."

In *Hartford Ins. Co.* v. *Chicago*, &c., *R. Co.*, 175 U. S. 91, 44 L. Ed. 84, 20 Sup. Ct. 33, also citing *Grand Trunk R.* v. *Richardson, supra*, it is said: "A railroad corporation holds its station grounds, railroad tracks and right of way for the public use for which it is incorporated, yet as its private property, and to be occupied by itself or by others in the manner which it may consider best fitted to promote, or not to interfere with, the public use. It may, in its discretion, permit them to be occupied by others with structures convenient for the receiving and delivery of freight upon its railroad, so long as a free and safe passage is left for the carriage of freight and passengers."

A case in point, where the subject is well considered, is *Calcasia Lumber Co.* v. *Harris*, 77 Tex. 18, 13 S. W. 453. In that case the action was brought by one Harris, alleging that the lumber company had constructed certain buildings on the right of way of the Houston and Tex. Cen. R. Co., for the purpose of carrying on a private business as a dealer in lumber and building materials, and that such buildings were an obstruction to railway traffic carried on by the patrons of the road and especially to the complainant, who was also a dealer in lumber and building materials; that the lumber company's buildings obstructed complainant in carrying lumber, when

unloaded from the cars, to his yards, situated about 200 feet from the railway track. The prayer of the complainant was that the buildings in question be removed from the railroad's right of way. The court, after distinguishing an easement from a fee simple in this connection, held that complainant had no cause of action. In the opinion it is said, that so long as the occupation and use of the land owned by and leased from the railway company does not create a nuisance directly affecting the complainant, he had no cause of action; that the use to which the lumber company had appropriated the land creates such a nuisance could not be claimed; that it might be that complainant could conduct his business more conveniently if the railroad company's property was not used as it had been, but if that be a lawful use, the inconvenience resulting from it does not give a cause of action.

In *Mich. Cent. R. Co.* v. *Bullard*, 120 Mich. 416, 79 N. W 635, approved in *Detroit* v. *Little & Co.*, 146 Mich. 373, 109 N. W. 671, the lease of a portion of the railway company's right of way was in question and in dealing with the validity of the lease the opinion of the court says: "The lease in question was made subject to termination on 60 days notice and was made to a manufacturing company with a view to furnishing facilities for furnishing freight to the company. Such a lease is not invalid." Citing *Railroad Company* v. *Richardson*, 91 U. S. 454, 23 L. Ed. 356; *Railroad Co.* v. *Wathen*, 17 Ill. App. 582; *Gurney* v. *Elevator Co.*, 63 Minn. 70, 65 N. W. 136, 30 L. R. A. 534; *Roby* v. *Railroad Co.*, 142 N. Y. 176, 36 N. E. 1053.

The authorities agree that the railroad's property must be devoted to public use to the extent necessary for the public objects intended to be accomplished by the construction and maintenance of the railroad as a highway; but, as said by Mr. Justice Harlan in *Donovan* v. *Penn. Co.*, 199 U. S. 279, 50 L. Ed. 192, 26 Sup. Ct. 91, where the facts were very similar to those in the case at bar:

"It by no means follows * * * * that the company may not establish such reasonable rules, in respect of the use of its property, as the public convenience and its interest may suggest, provided only that such rules are consistent with the ends for which the corporation was created, and not inconsistent with public regulations legally established for the conduct of its business. Although its functions are public in their nature, the company holds the legal title to the property which it has undertaken to employ in the discharge of those functions."

Of course, as the opinion in that case holds, a railroad is required, under all circumstances, to do what may be reasonably necessary and suitable for the accommodation of passengers and shippers, but it is under no obligation to refrain from using its property to the best advantage of the public and itself. In this view, one who wishes to use railroad property for storage or any other use not a railroad use, cannot complain that others are permitted to use the railroad property for their private business, so long as sufficient railroad facilities are afforded by the railroad company.

The *bona fides* of the complaint made in this case is not questioned, but in our view of the evidence the complainants have been deprived of no essential right they possessed before, nor the traveling public or shippers of freight of that reasonable and equal service to which they are entitled.

The Constitution of this State and the statutes enacted in pursuance of the constitutional provisions confer upon the State Corporation Commission control over common carriers and public service corporations, with well defined constitutional and statutory limitations upon that power. The Commission and the courts cannot undertake to remove individual inconveniences to shippers, such as are complained of here, so long as the carrier or public service corporation affords reasonable facilities for the reception and delivery of feight for

the general public, and denies no individual or individuals an essential right. That is this case upon the facts proven.

We are, therefore, of opinion that the order of the Corporation Commission appealed from is erroneous and should be reversed, and this court will enter the order that the Commission should have entered, dismissing appellees' petition, with costs to the appellant.

*Reversed.*