130 P.3d 880 (2006)
132 Wash.App. 188
WASHINGTON SECURITIES & INVESTMENT CORPORATION, a Washington Corporation, Respondent,
v.
HORSE HEAVEN HEIGHTS, INC., a Washington Corporation, and Martin O. Rankin and Valerie Rankin, husband and wife and their marital community, Appellants.
No. 23752-4-III.
Court of Appeals of Washington, Division 3.
March 23, 2006.
*882 P. Stephen DiJulio, Justin D. Haag, Foster, Pepper PLLC, Seattle, for Appellants.
John G. Schultz, George E. Telquist, Leavy, Schultz, David & Fearing PS, Kennewick, for Respondent.
THOMPSON, J.[*]
¶ 1 This case deals with a portion of a right-of-way granted in limited fee to Northern Pacific Railway Company that was subsequently transferred via quitclaim deed to a private company (Washington Securities and Investment Corporation). The United States also issued a land patent to Martin Rankin to the same property. In cross-appeals to quiet title, the trial court granted summary judgment in favor of Washington Securities and Investment Corporation (WSIC). Martin and Valerie Rankin allege that the trial court erred (1) by classifying the railroad company's interest as a limited fee with a right of reverter rather than an easement, (2) by finding that the railroad could alienate any property within the right-of-way, and (3) by quieting title in favor of WSIC and failing to quiet title in the Rankins' favor. We affirm the trial court.

FACTS
¶ 2 This case relates to real property located within the city of Kennewick that is a portion of a right-of-way granted to the Northern Pacific Railroad Company (hereinafter NPRC). The Northern Pacific Railroad Land Grant Act of 1864[1] (1864 Act) created the NPRC and empowered this company to construct a railroad from Lake Superior to the Pacific coast. Section 2 of this act allowed the NPRC to appropriate public lands for a right-of-way that would extend 200 feet from either side of the actual railway. The Kennewick property that underlies this dispute is part of the right-of-way attaching to NPRC's railway. Construction of the portion of the railway in question occurred in 1883.
¶ 3 The NPRC subsequently became known as the Burlington Northern and Sante Fe Railway Company (BNSF). In 2003, BNSF conveyed a portion of its right-of-way to WSIC by executing a quitclaim deed. However, BNSF specifically quitclaimed the property subject to the railroad's reservations and rights-of-way. BNSF has never ceased its use or maintenance of the railway through the disputed property.
¶ 4 In 1975, the United States issued a land patent to Martin Rankin that conveyed a plot of land that included BNSF's right-of-way. This patent conferred on the Rankins[2] a reversionary interest in the right-of-way. The Rankins eventually contacted BNSF and WSIC regarding the right-of-way on the property and the buildings that WSIC constructed on it. Through a series of letters, WSIC and the Rankins both adopted the *883 posture that they were the actual owners of the portion of the right-of-way that BNSF deeded to WSIC.
¶ 5 WSIC filed a complaint and asked the trial court to enter summary judgment in its favor quieting title to the disputed property on March 31, 2004. The Rankins filed a cross motion for summary judgment.
¶ 6 In a memorandum decision, the trial court found that the 1864 Act granted the NPRC the right-of-way as a limited fee interest. It also found that the railroad was still using the disputed property and had not abandoned it, despite a portion of that property being subject to the quitclaim deed held by WSIC. Based on these findings, the trial court held that WSIC's claim to the property prevailed over the Rankins' land patent, and therefore granted summary judgment quieting title in favor of WSIC. This memorandum decision was incorporated by reference into the court's judgment and order.
¶ 7 The Rankins filed a motion for reconsideration, which the trial court denied. This appeal timely followed.

ANALYSIS

Application of the 1864 Act
¶ 8 As a threshold matter, we must determine when the railroad's interest in the disputed property arose, as this will determine the nature of the property interests at stake in this matter. The Rankins assign error to the court's finding that NPRC (later known as BNSF) acquired the right-of-way through the 1864 Act rather than from the Railroad Right-of-Way Acts of 1875[3] (1875 Act). A determination of the nature of the Rankins' and the railroad's property interests depends on whether NPRC's interest is deemed to have arisen from the 1864 Act or the 1875 Act.
¶ 9 A right-of-way for a railroad may be in limited fee or as an easement. Ray v. King County, 120 Wash.App. 564, 571, 86 P.3d 183, review denied, 152 Wash.2d 1027, 101 P.3d 421 (2004). Whether a conveyance is one of limited fee or easement is a conclusion of law. Id. The general rule is that a right-of-way for a railroad is classified as a limited fee with a right of reverter if received from Congress before 1871, but is classified as an exclusive use easement if the right-of-way is received after 1871.[4]See, e.g., Idaho v. Or. Short Line R.R., 617 F.Supp. 207, 209 (D.Idaho 1985); Vieux v. E. Bay Reg'l Park Dist., 906 F.2d 1330, 1332-33 (9th Cir.1990).
¶ 10 Railways are considered to be in the nature of public highways. Lawson v. State, 107 Wash.2d 444, 449, 730 P.2d 1308 (1986). When an easement is taken as a public highway, title to the land remains with the owner of the encumbered property and the public only takes the right of passage or use. See City of Seattle v. P.B. Inv. Co., 11 Wash.App. 653, 657, 524 P.2d 419 (1974). Therefore, if the right-of-way was granted to the railroad as an easement, then the Rankins would hold title to the land underlying the right-of-way and the railroad would merely maintain a right of use so long as it continued to operate its railway.
¶ 11 Section 2 of the 1864 Act provided that the right-of-way through public lands "be, and the same is hereby, granted" to NPRC. Similar language has been held to designate an immediate transfer of interest, so that, when the route is definitely fixed, the title attaches from the date of the act to the sections of land in question. St. Joseph & Denver City R.R. v. Baldwin, 103 U.S. 426, 429, 26 L.Ed. 578 (1880). This means that, upon a definite route being identified by NPRC, the title to those lands attached and is deemed to relate back to July 2, 1864. St. Paul & Pac. R.R. v. N. Pac. R.R., 139 U.S. 1, 5, 11 S.Ct. 389, 35 L.Ed. 77 (1891). See also H.A. & L.D. Holland Co. v. N. Pac. Ry., 214 F. 920, 922 (9th Cir.1914) (finding that title was acquired under the 1864 Act, even *884 though the tracks were not definitely located until 1880 or platted until 1881).
¶ 12 As such, we find that the disputed property in this case was received as of 1864, even though the location of the definite route and actual construction of the railway did not occur until later. Because the land is deemed to have been received from Congress in 1864, and because this is prior to the shift in classification from limited fee to easement, BNSF received the right-of-way as a limited fee with a right of reverter.

Summary Judgment
¶ 13 In reviewing a grant of summary judgment, this court engages in the same review as the trial court. Harris v. Ski Park Farms, Inc., 62 Wash.App. 371, 375, 814 P.2d 684 (1991), aff'd, 120 Wash.2d 727, 844 P.2d 1006 (1993). Summary judgment should be granted only where all of the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Id.
¶ 14 RCW 7.28.010 requires that a person seeking to quiet title establish a valid subsisting interest in property and a right to possession thereof. See also Magart v. Fierce, 35 Wash.App. 264, 266, 666 P.2d 386 (1983). The requirement to prove some claim of ownership is also necessary under CR 17(a) in order to establish standing as a real party in interest. Id. The party with superior title, whether legal or equitable, must prevail. Finch v. Matthews, 74 Wash.2d 161, 166, 443 P.2d 833 (1968).
¶ 15 A party seeking to quiet title must succeed on the strength of its own title, and cannot prevail based on the weakness of the other party's title. Ray, 120 Wash.App. at 571, 86 P.3d 183. Therefore, because this case comes to this court upon cross motions for summary judgment quieting title, both WSIC and the Rankins had the burden of proving ownership of the land in question and standing as a real party in interest. See Magart, 35 Wash.App. at 266, 666 P.2d 386. Because both parties sought summary judgment to quiet title in themselves, we address the validity of their respective claims of title separately.

The Rankins' Motion for Summary Judgment
¶ 16 The effect of the 1864 Act was to confer a limited fee in NPRC, with the United States retaining a reversionary interest in the event that the railroad ceased to use or retain the land for the purpose for which it was granted. McDonald v. Ward, 99 Wash. 354, 357-58, 169 P. 851 (1918). Congress subsequently adopted 43 U.S.C. § 912, which provides that, upon abandonment of the right-of-way by a railroad, the reversionary interest in the right-of-way passes automatically to any person who had title to the land underlying the right-of-way. See Marlow v. Malone, 315 Ill.App.3d 807, 734 N.E.2d 195, 198-201, 248 Ill.Dec. 487 (2000). A person can establish title to the land underlying the right-of-way through showing a chain of title leading back to the United States. Id. at 202-03.
¶ 17 In this case, the United States conveyed its reversionary interest in the right-of-way to the Rankins by issuing them a land patent that included the right-of-way. The possibility of reverter is not a vested right, but is a mere expectancy of property in the future. Gillis v. King County, 42 Wash.2d 373, 378, 255 P.2d 546 (1953). Therefore, in order for the Rankins to have any title to the right-of-way, they must establish that the right-of-way has been abandoned. There are generally two standards of abandonment with regard to railroad rights-of-way: common law abandonment and statutory abandonment.

1. Common Law Abandonment
¶ 18 The issue of whether there has been an abandonment at common law depends on the intention of the owner of the right-of-way. Neitzel v. Spokane Int'l Ry., 80 Wash. 30, 34, 141 P. 186 (1914). A right-of-way may be abandoned by unequivocal acts showing a clear intention to abandon. Id. at 35-36, 141 P. 186.
¶ 19 Mere nonuse of a portion of a railroad's easement does not itself constitute an abandonment. Id. at 34, 141 P. 186. A railroad is under no obligation to refrain *885 from using its property to the best advantage of the public and itself. Id. at 36-37, 141 P. 186 (quoting Danville & W. Ry. v. Lybrook, 111 Va. 623, 69 S.E. 1066 (1911)). There is no abandonment so long as the use to which the property is put, although a private use, is incidental to or contributes to the company's business as a transportation company. Neitzel, 80 Wash. at 38, 141 P. 186.
¶ 20 In this case, as previously noted, it is conceded that BNSF is still operating along the railroad lines within the right-of-way. Moreover, the language of the deed to WSIC indicates that BNSF retained reservations and rights-of-way within the property that the railroad quitclaimed to WSIC. This does not indicate a present intent to abandon the property for railroad uses. This language would instead indicate that the railroad transferred its interest in the property only under the condition that the railroad could maintain necessary railroad uses of that portion of the right-of-way. As such, the Rankins cannot establish common law abandonment.

2. Statutory Abandonment
¶ 21 Statutory abandonment is governed by federal law. 43 U.S.C. § 912 provides for an automatic reverter back to the United States, or to a person or entity with title tracing back to the United States, of public lands that were granted for use as a right-of-way. This section applies regardless of whether the railroad has a limited fee with a right of reverter or an exclusive easement. Keife v. Logan, 119 Nev. 372, 75 P.3d 357, 359 (2003). Under this section, in order for reversionary rights to vest, the railroad must (1) cease "`use and occupancy'" of the rights-of-way and (2) abandonment must be "`declared or decreed'" by a court of competent jurisdiction or a congressional act. Vieux, 906 F.2d at 1337 (quoting Or. Short Line R.R., 617 F.Supp. at 216, 218). Neither condition has occurred in this case.
¶ 22 As a general rule, statutory abandonment also requires authorization from the Surface Transportation Board (formerly known as the Interstate Commerce Commission). See 49 U.S.C. §§ 10102(1), 10903; Phillips Co. v. Denver & Rio Grande W. R.R., 97 F.3d 1375, 1376 (10th Cir.1996); Vieux, 906 F.2d at 1337-38. This requires an affirmative application on the part of the railroad in order to abandon or discontinue use of its railroad lines. 49 U.S.C. § 10903.
¶ 23 Here, there has been no such application on the part of BNSF. In fact, BNSF still operates along its railroad line that falls within the disputed right-of-way. Because there has been no application for statutory abandonment and the railroad is still actively maintaining and using its railroad lines through the right-of-way, the Rankins also cannot claim statutory abandonment.
¶ 24 Moreover, even if we were to deem the disputed portion of the right-of-way to be abandoned, the Rankins likely would not be able to prove good title to the property. Vested reversionary rights are also subject to divestment under the "exceptions" that are enumerated within 43 U.S.C. § 912. See, e.g., Vieux, 906 F.2d at 1337. Even if the right-of-way had been abandoned in part by BNSF, 43 U.S.C. § 912 also contains a "municipality exception," which provides for a different result if the right-of-way happens to run within a municipality. City of Buckley v. Burlington N. R.R., 106 Wash.2d 581, 583-84, 723 P.2d 434 (1986). In such a circumstance, the municipality takes the reversion regardless of whether it has title to the underlying fee. Id. at 587, 723 P.2d 434. This is the case even if a private individual, firm, or corporation has received a patent from the U.S. government to the land underlying the right-of-way. Id.
¶ 25 The land in dispute in this case lies within the bounds of the municipality of Kennewick. As such, the reversion interest in the land within the right-of-way would revert to the city of Kennewick, rather than automatically to the Rankins. Therefore, even if there was a common law abandonment of the disputed portion of the right-of-way, the Rankins would still not be entitled to the reversionary interest.
¶ 26 The Rankins bore the burden of establishing a valid subsisting interest in the disputed property and a right to possession thereof in order to be entitled to summary judgment quieting title in their favor. However, *886 the Rankins do not have a present interest in the property that would give them standing to seek summary judgment as a party in interest. They also cannot prevail based solely on the alleged deficiencies in WSIC's title. Therefore, we hold that the trial court did not err in denying the Rankins' motion for summary judgment quieting title in their favor.

WSIC's Motion for Summary Judgment
¶ 27 WSIC acquired whatever interest it has in the disputed property through a quitclaim deed from BNSF. Therefore, WSIC's interest is limited to whatever interest in the property BNSF had. See, e.g., Lawson, 107 Wash.2d at 458, 730 P.2d 1308; McGill v. Shugarts, 58 Wash.2d 203, 204, 361 P.2d 645 (1961).
¶ 28 There is precedent that the railroad lacked the legal authority to alienate any portion of the right-of-way granted by Congress while it continued to operate and maintain the railway. Some courts have held that the grant of such a limited fee implied a condition of a reverter should the railroad cease to use or retain the land for the purposes for which it was granted. See, e.g., McDonald, 99 Wash. at 358, 169 P. 851. The United States Supreme Court has also interpreted the provisions of the 1864 Act as granting the rights-of-way for designated railroad purposes only, and not granting them with the intent that the land might absolutely be disposed of at the will of the railroad company. N. Pac. Ry. v. Townsend, 190 U.S. 267, 271, 23 S.Ct. 671, 47 L.Ed. 1044 (1903). Therefore, "`a railroad company ... is not at liberty to alienate any part of [its roadway] so as to interfere with the full exercise of the franchises granted.'" Id. (quoting Grand Trunk R.R. v. Richardson, 91 U.S. 454, 468, 23 L.Ed. 356 (1875)).
¶ 29 However, the prohibition against nonrailroad uses of rights-of-way is not absolute. A railroad may be able to alienate a portion of its right-of-way based on some necessity or public need beyond the railroad's own desire for economic gain. Holland, 214 F. at 926-27.
¶ 30 Additionally, the incidental use doctrine permits a railroad to use its easement to conduct not only railroad activities, "`but also any other incidental activities that are not inconsistent and do not interfere with the operation of the railroad.'" Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 156 Wash.2d 253, 273, 126 P.3d 16 (2006) (quoting Danaya C. Wright & Jeffrey M. Hester, Pipes, Wires, and Bicycles: Rails-to-Trails, Utility Licenses, and the Shifting Scope of Railroad Easements from the Nineteenth to the Twenty-First Centuries, 27 ECOLOGY L.Q. 351, 421 (2000)).
¶ 31 The Supreme Court decision in Kershaw actually overturned the application of the incidental use doctrine by the Court of Appeals. At issue in the Kershaw case was the installation of fiber optic telecommunications cable along a railroad line. The railway partially passed through private land where BNSF had been granted an easement through private deed. The Court of Appeals found that there was no trespass on the part of the telecommunications company that owned the cable based on application of the incidental use doctrine and therefore reversed the trial court. The Supreme Court also noted that the Court of Appeals and the trial court engaged in very divergent analyses with regard to the incidental use doctrine. Id. at 274, 126 P.3d 16.
¶ 32 The trial court's analysis centered on the issue of whether the use was "reasonably necessary to the operation of the railroad." Id. Because it determined that the fiber optic lines were not reasonably necessary to the operation of the railroad, the trial court deemed the lines to constitute a trespass. Id.
¶ 33 The Court of Appeals rejected this conclusion, holding that the incidental use doctrine applies so long as the use of the railway is not inconsistent with the public use to which the railway is dedicated. Id. As the fiber optic lines did not interfere with the use of the railway, the Court of Appeals determined that there was no trespass. Id.
¶ 34 In contrast, the Supreme Court reversed the determination of the Court of Appeals because of a controlling statute (RCW 80.36.040). The Court also noted in *887 dicta, however, that "[a]bsent the clarifying language in RCW 80.36.040, the Court of Appeals analysis may be sufficiently compelling to find the telecommunications cable an incidental use." Id. at 276, 126 P.3d 16. This language strongly indicates an endorsement of the interpretation of the incidental use doctrine as embodied in the Court of Appeals opinion, rather than the stricter application employed by the trial court.
¶ 35 Moreover, the Washington Supreme Court in Neitzel cites to extensive authority for the proposition that even private uses of a right-of-way may not constitute an abandonment so long as the use is incidental to the railroad's business. Neitzel, 80 Wash. at 34-35, 141 P. 186.
¶ 36 Nearly all of the authority cited by Neitzel in support of the incidental use doctrine dealt with leases rather than an out-right transfer of title to a portion of the right-of-way. Here, BNSF quitclaimed its interest in a portion of its right-of-way. This distinction is of relevance to the determination of whether an abandonment has occurred given that an outright transfer of title may indicate a permanent intention by the railroad to cease use of that portion of the right-of-way.
¶ 37 Despite the transfer of title to the property in question, there are several reasons the transfer of title to WSIC may nonetheless be valid. The cases focusing on permissible transfers dealt mostly with leases of rights-of-way that were granted as easements. See, e.g., Roby v. N.Y. Cent. & Hudson River R.R., 142 N.Y. 176, 36 N.E. 1053 (1894); Danville, 111 Va. 623, 69 S.E. 1066; Ill. Cent. R.R. v. Wathen, 17 Ill.App. 582 (1885). As noted above, a railroad with a right-of-way held in easement has no title to the underlying property. Instead, the railroad merely has permission to use the property for the purposes for which the right-of-way was granted.
¶ 38 Here, the railroad's property interest is held in limited fee. As such, the railroad may have certain rights to the alienation of its property so long as the transfer results in a use of the right-of-way that is not inconsistent and does not interfere with the operation of the railroad.
¶ 39 Moreover, there is language in the railroad's quitclaim deed to WSIC that makes clear that WSIC only took title subject to the railroad's reservations and continued use of the right-of-way. As such, BNSF retained the right to use the property in question if such use is needed for the railroad's operations. This language, coupled with BNSF's continued use of the lines running within the right-of-way, supports the inference that the transfer of title to WSIC did not create an interest in that property that is inconsistent or interferes with the operation of the railroad by BNSF.
¶ 40 Applying the incidental use doctrine to this case, the transfer of title to WSIC was not inconsistent and did not interfere with the operation of the railroad. The trial court therefore did not err in quieting title in favor of WSIC.
¶ 41 Affirmed.
WE CONCUR: SCHULTHEIS and BROWN, JJ.
NOTES
[*] Judge Philip J. Thompson is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.
[1] See ch. 217, 13 Stat. 365 (1864).
[2] Appellants Martin Rankin, Valerie Rankin, and Horse Heaven Heights are herein referred to collectively as "the Rankins."
[3] See ch. 152, 18 Stat. 482 (1875).
[4] Case law indicates that the reason behind this shift in policy from granting fees to only granting easements was increased public opinion opposing large outright grants of land in order to subsidize the construction of the railroads. See Idaho v. Or. Short Line R.R., 617 F.Supp. 207, 210 (D.Idaho 1985); Home on the Range v. AT & T Corp., 386 F.Supp.2d 999 (S.D.Ind.2005).