IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| GMAC MORTGAGE, LLC, | ) | No. 30749-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SPOKANE, | ) | |
| | ) | |
| Petitioner, | ) | UNPUBLISHED OPINION |
| | ) | |
| JEANNETTE J. SWAN, HEIRS OF | ) | |
| JEANNETTE J. SWAN, FRANK LINE | ) | |
| AND JANE DOE LINE, and the marital | ) | |
| community thereof, and ROBERT S. | ) | |
| DELANEY PLLC, TRUSTEE, | ) | |
| | ) | |
| Defendants. | ) | |

KULIK, J. — The city of Spokane (City) seeks review of the ruling denying its motion for summary judgment in GMAC Mortgage's action for declaratory judgment, quiet title, and injunctive relief.

In 1998, the City made a loan to Jeannette Swan and recorded its deed of trust. In 2008, GMAC made a loan to the then-owner of the property, Frank Line, Ms. Swan's son. In April 2011, the City initiated nonjudicial deed of trust foreclosure proceedings.

GMAC filed this action for declaratory judgment, quiet title, and injunctive relief. The City moved unsuccessfully for summary judgment, arguing that the City's lien has priority over GMAC's deed of trust. This court granted discretionary review under RAP 2.3(b)(4).

We agree that Mr. Line could, and did, waive any lack of compliance with the provisions of the City's note, that Mr. Line waived any statute of limitations defense, and that GMAC lacks standing to assert a breach of contract defense or a statute of limitations defense. We, therefore, reverse the trial court and grant summary judgment in favor of the City.

## FACTS

On July 13, 1998, Jeannette Swan obtained a loan from the City under the City's Community Development Department Single Family Housing Rehabilitation Program (Program) and executed the City's note and the City's deed of trust.

The Program made home rehabilitation loans to low-income owner-occupants of single family properties within the City. In addition to gross income and assets limits, criteria for eligibility for a loan included the requirements that all owners of record must sign the City's note and deed of trust securing the loan and that real property taxes must be current at the time the applicant is declared eligible for assistance.

2

Under the Program, payments on the note were deferred for an initial period expiring September 1, 2003, at which time Ms. Swan's eligibility under the Program was to be re-evaluated. The City's note provided:

> If, upon the first re-evaluation of loan, Borrower is determined not to be eligible for continued deferral of principal and interest payments, Borrower will begin repaying the principal balance of this Note in monthly installments . . . . The first payment of $184.13 or more shall be due on the first day of the succeeding month and thereafter payments of $184.13 or more will be due on the first day of each month until the entire balance of principal and interest is paid in full.

Clerk's Papers (CP) at 49.

Under these terms, the City's note provided that if Ms. Swan was no longer eligible for the Program as of September 1, 2003, monthly payments would commence on the note on the first day of the following month—October 1, 2003.

Ms. Swan died on October 12, 2000. On November 20, 2001, the property was conveyed from Ms. Swan's estate to her son, Frank Line. Mr. Line, as personal representative of the estate, executed a personal representative's deed conveying the property to himself.

No reviews of the borrower's eligibility to continue the City's note in deferral status were conducted and the City never took the note out of deferral status. Taking the

loan out of deferral status would have triggered the need to begin making monthly payments.

In November 2001, the City received notice of Ms. Swan's death and was informed that the personal representative of her estate was Mr. Line and that the attorney representing the estate was Melvin Champagne. On November 27, 2001, the City sent a letter to Mr. Champagne notifying him of the City's lien and requesting him to contact the City's office. Mr. Champagne responded by telephone and advised the City that Mr. Line was attempting to refinance the property to pay off the City's note. The City received no written correspondence from Ms. Swan's estate. The City did not file a creditor's claim in Ms. Swan's estate.

Unless the borrower qualified for continued eligibility, the deferral of payments on the City's note terminated on September 1, 2003. By this date, the City had heard nothing further from Mr. Line or Mr. Champagne. On September 9, 2003, the City sent a letter to Mr. Line requesting "an update on the situation and the status of the property." CP at 102. On September 10, 2003, Mr. Line "called and left a message" stating that he "knows this loan is due to us" and that "[h]e knows [this loan] is the 1st priority to pay off when refinancing." CP at 102.

4

The first payment on the City's note was due on October 1, 2003. The City received no payment or correspondence from Mr. Line. Mr. Line had not assumed the City's note. The real property taxes on the property were delinquent. Mr. Line had not met the eligibility requirements for further deferral of loan payments under the City's Program. Despite these shortcomings, the City did not take any further action on this delinquent loan for approximately 20 months. On July 1, 2005, the City sent another pay-off letter to Mr. Line. The City received no correspondence from Mr. Line.

On March 28, 2007, the City sent Mr. Line a letter that referred to a telephone message he had left three and one-half years earlier on September 10, 2003. The City received no response to its letter. In December 2007, the City purportedly received information from a mortgage broker, Western Capital Mortgage, indicating that Mr. Line was attempting to refinance his loan. The City received no correspondence from Mr. Line.

On March 14, 2008, GMAC made a loan to Mr. Line in the amount of $73,000. The loan is secured by a deed of trust dated March 14, 2008, and recorded April 2, 2008.

The City sent another letter to Mr. Line on March 12, 2009. On March 13, 2009, Mr. Line had a telephone conversation with Ed Bower of the City; notes from the conversation read: "he called—can't afford to pay us anything new—maybe in July?" CP

5

at 117. The notes also ask: "Is it possible for him to 'assume' our loan as 'low-income home owner'—'deferred' status?" CP at 117.

In October 2009, Mr. Line contacted Kiemle & Hagood Company, which acted as the City's Community Development Department's property manager, requesting an additional development loan to install a new roof. The City sent an e-mail to Kiemle & Hagood explaining that Mr. Line had inherited the property with a preexisting loan and that for him to get assistance, he would need to close out the old loan and roll it into the new loan.

On or about December 21, 2010, Mr. Line vacated the property. By January 2011, the City learned Mr. Line had moved from the property and the house was vacant. The City referred the matter to attorney Robert Delaney who works with the City's Community Development Department.

On April 1, 2011, Mr. Delaney initiated nonjudicial deed of trust foreclosure proceedings under the City's deed of trust. On July 12, 2011, 30 days prior to the scheduled trustee's sale, Mr. Delaney was contacted by First American Title Company on behalf of GMAC and was told that the City's foreclosure action was barred by the applicable statute of limitations.

At Mr. Delaney's request, Mr. Line signed and returned an "Acknowledgement and Reinstatement of Promissory Note." CP at 53. In this document, Mr. Line stated that the property had been transferred to him in 2001, that he was not aware of any payments made on the promissory note, and he "hereby absolutely, unqualifiedly, and unconditionally" acknowledged the debt and waived the applicable six-year statute of limitations in order to permit the City to judicially or nonjudicially foreclose the City's deed of trust. CP at 136.

On October 7, 2011, GMAC filed this action seeking declaratory judgment, quiet title, and injunctive relief. GMAC acknowledges that Mr. Line is the record owner of the property. GMAC does not contend that it lacked actual or constructive notice of the City's deed of trust when it made its loan and recorded its deed. GMAC also does not contend that it was ever a party to the City's note or deed of trust, a successor in interest under either the City's note or deed of trust, an intended beneficiary under either of them, or record owner of the property.

The City moved for summary judgment. The City requested a determination (1) that the City's deed of trust constitutes a first lien superior to the lien of the deed of trust in favor of GMAC, (2) that the City's right to enforce and foreclose its lien is not barred or impaired by any statute of limitations, (3) that GMAC lacks standing and has no

7

right to challenge the City's right to foreclose its deed of trust lien, (4) dissolving the injunction issued in this matter in favor of GMAC, and (5) awarding reasonable attorney fees and costs incurred by the City in this matter to be added to the amounts owed to the City, to be included as part of the balance owed to the City in the nonjudicial foreclosure of the City's deed of trust.

The parties stipulated that there were no disputed facts. The trial court denied the City's motion for summary judgment and ordered that the injunction issued in this matter in favor of GMAC on October 27, 2011, should remain in place until further order of the court. The court concluded that summary judgment was improper because issues of fact remained.

After reconsideration was denied, the City moved for discretionary review. This court granted discretionary review.

## ANALYSIS

*Standard of Review.* The trial court denied the City's motion for summary judgment. We review the appeal of a trial court's order denying summary judgment de novo, engaging in the same inquiry as the trial court. *Triplett v. Dep't of Soc. & Health Servs.*, 166 Wn. App. 423, 427, 268 P.3d 1027, *review denied*, 174 Wn.2d 1003, 278 P.3d 1111 (2012). Here, there are no material facts in dispute.

8

*Standing.* The City argues that GMAC cannot show that it has standing because GMAC was never a party to, successor under, or intended beneficiary of the City's note. GMAC contends it has standing to assert its claims. Alternatively, GMAC argues that the principles of standing do not apply because GMAC does not assert a breach of contract claim. This argument is based on the assumption that the alleged expiration of the statute of limitations on the City's note caused the City's deed of trust to become wholly unenforceable.

Principles of standing are intended to prevent one party from asserting another's legal right. *West v. Thurston County*, 144 Wn. App. 573, 578, 183 P.3d 346 (2008). In order to establish standing sufficient to enforce private rights or challenge private rights, the challenging party must demonstrate that it has some real interest and that the interest is present and substantial, as opposed to an expectancy or future contingent interest. *Kim v. Moffett*, 156 Wn. App. 689, 698, 234 P.3d 279 (2010) (quoting *State ex. rel. Hays v. Wilson*, 17 Wn.2d 670, 672, 137 P.2d 105 (1943)).

GMAC argues that statutory provisions provide GMAC with standing. In this regard, GMAC relies on RCW 7.28.300; Washington's uniform declaratory judgments act (UDJA), chapter 7.24 RCW; and Washington's quiet title statute, RCW 7.28.010.

*Contract Claim.* In the context of contract litigation, the challenging party must generally demonstrate that it was either a party to the contract at issue or an intended beneficiary under that contract. Here, GMAC would have to show that it was an intended beneficiary. GMAC would also have to show that the City and Ms. Swan intended to confer benefits on GMAC and create an interest in its favor at the time they formed their contract. *Kim*, 156 Wn. App. at 701 (quoting *Burg v. Shannon & Wilson, Inc.*, 110 Wn. App. 798, 807-08, 43 P.3d 526 (2002)). Common law cases establish that the owner of the property has a separate standing to assert a statute of limitations defense in opposition to an attempt to foreclose a mortgage. *See George v. Butler*, 26 Wash. 456, 460-61, 67 P. 263 (1901).

GMAC does not satisfy any of the requirements necessary to establish standing to challenge the manner in which the contract between the City and Ms. Swan or Mr. Line was administered or handled. Moreover, GMAC satisfies none of the requirements to establish standing to assert a statute of limitations defense. And GMAC was never a party or successor in interest under the City's loan agreement, note, or deeds of trust and was never a party or successor in interest under any of those instruments or agreements. GMAC's loan did not come into existence until years after the City's note was made and

10

the City's deed of trust was recorded. The City, Ms. Swan, or Mr. Line did not intend to benefit or confer enforcement rights on GMAC.

*UDJA.* To find that a party has personal standing in order to seek a declaratory judgment, a party must have standing under RCW 7.24.020:

> A person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status . . . municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Washington courts have adopted a two-part test to determine standing under the UDJA. The first part of the test asks whether the interest the complainant seeks to protect is in the zone of interests to be protected by the statute or constitutional provision in question. *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake* (*Grant County* II), 150 Wn.2d 791, 802, 83 P.3d 419 (2004) (quoting *Save a Valuable Env't v. City of Bothell*, 89 Wn.2d 862, 866, 576 P.2d 401 (1978)). The second part of the test considers whether the challenged action has caused injury in fact. *Grant County* II, 150 Wn.2d at 802 (quoting *Save a Valuable Env't*, 89 Wn.2d at 866).

In support of this claim, GMAC relies on *Grant County Fire Protection District No. 5 v. City of Moses Lake* (*Grant County* I), 145 Wn.2d 702, 42 P.3d 394 (2002), *rev'd in part by Grant County* II, 150 Wn.2d 791. GMAC claims that this case granted

standing to seek substantive relief under Washington's UDJA to any party whose financial interest would be affected. GMAC explains that the court granted standing to fire districts under the UDJA to challenge annexation of property by a city even though the districts' properties were not included within the annexation plan. *See Grant County* I, 145 Wn.2d at 714. However, this portion of the Grant County decision was reversed in *Grant County* II. In the revised decision, the court denied the fire districts personal standing under the UDJA because the challenged statute was not designed to protect their interests. *Grant County* II, 150 Wn.2d at 802-03.

GMAC next argues that its reference to *Grant County* II "was simply to illustrate that to establish standing under the UDJA, the plaintiff must have a sufficient interest, which can be a 'financial interest' in the instrument underlying the dispute." CP at 267. But the court in *Grant County* II provided guidance for standing under the UDJA, stating: "[t]his statutory right is clarified by the common law doctrine of standing, which prohibits a litigant from raising another's legal right." *Grant County* II, 150 Wn.2d at 802.

Even under GMAC's interpretation of the UDJA, GMAC lacks standing. To establish standing under the UDJA, GMAC would have to establish that it has a financial

interest in the instrument underlying the dispute, namely, the City's note or the City's deed of trust. GMAC has never had an interest in either.

As a junior creditor, it is difficult to see how GMAC would have standing under RCW 7.24.020. This provision provides that a person interested in or affected by a contract may obtain a "declaration of rights, status or other legal relations thereunder." RCW 7.24.020.

Alternatively, GMAC contends that its request for standing is supported by *Casey v. Chapman*, 123 Wn. App. 670, 98 P.3d 1246 (2004). In *Casey*, the court noted that a person interested under a written contract whose rights were affected by a contract can seek declaratory relief, as can parties whose financial interests are affected by the outcome of a declaratory judgment action. *Id.* at 676. Significantly, Mr. Chapman, the party whose standing was challenged, was an original party to the contract and would have had standing under traditional concepts found in case law.

Even if we assume that GMAC has a right to request declaratory relief under the UDJA, that would not mean that GMAC had a right to obtain the substantive relief it requests. Under RCW 7.24.020, certain parties interested in contracts can request a court to "determine[ ] any question of construction or validity" under the contract and "obtain a declaration of rights, status or other legal relations thereunder." Nothing in this provision

13

grants a party with no standing in a contract issue the right to interject itself into the contractual dealings between third parties and assert substantive rights under the contract.

*Quiet Title Statute.* GMAC next argues that it has standing to bring its quiet title claim under the common law or pursuant to RCW 7.28.010, Washington's quiet title statute.

The requirements of RCW 7.28.010 must be met in order for a plaintiff to pursue a quiet title action. "RCW 7.28.010 requires that a person seeking to quiet title establish a valid subsisting interest in property and a right to possession thereof." *Wash. Sec. & Inv. Corp. v. Horse Heaven Heights, Inc.*, 132 Wn. App. 188, 195, 130 P.3d 880 (2006). *Webster's Dictionary* defines "subsist" as "to have existence: be or remain alive . . . . [T]o exist in a particular way or condition or have a particular form." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2279 (1993). GMAC cannot show that it has standing based on a subsisting interest in the property or a right to possession.

GMAC next asserts that RCW 7.28.300 grants GMAC standing. However, RCW 7.28.300 reads as follows:

> The *record owner of real estate* may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations, and, upon proof sufficient to satisfy the court, may have judgment quieting title against such a lien.

14

(Emphasis added.)

RCW 7.28.300 is not available to GMAC because GMAC is not the record owner of the property involved here. GMAC argues that this provision encompasses the common law and should be read to include any interested person having a right to bring an action to quiet title. The customary rules of statutory construction require that unambiguous statutes must be interpreted so that the language is given its plain meaning. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Given that reading, RCW 7.28.300 should not be read to include a junior lienholder like GMAC who is not the record owner of the real estate.

GMAC also argues that the requirement that the party must have possession of the property only applies when a plaintiff has a complete remedy at law. GMAC relies on *Dolan v. Jones*, 37 Wash. 176, 179, 79 P. 640 (1905). First, GMAC, a junior lienholder, has the same complete remedy it received when it made its loan to Mr. Line. Second, GMAC's reliance on *Dolan* is misplaced. In *Dolan*, a property owner sued to have a tax foreclosure sale declared invalid because the sale had been improperly conducted. The court stated that the claim was not brought to quiet title and confirmed that a party not having possession of the property is not entitled to bring a quiet title action. *Id.*

*Equity.* Lastly, GMAC argues that it has standing on equitable grounds. In Washington, quiet title claims are equitable in nature. *Smith v. Monson*, 157 Wn. App. 443, 448-49, 236 P.3d 991 (2010). However, standing to assert a claim in equity rests in the party entitled to equity. *Id.* at 449. Here, GMAC has articulated no principle suggesting any right to equity resides in GMAC. GMAC had notice of the City's lien when it made its loan, and GMAC had no right to expect that it would have anything other than a junior lien. This case is not like *Smith* where the plaintiff was granted standing to assert a claim in equity to enforce a promise on which she relied to her detriment. *Id.* at 448-49.

*Waiver.* Mr. Line—as successor owner of the property, the personal representative of Ms. Swan's estate, and the record owner of the property—had the right to challenge foreclosure of the City's deed of trust based on the expiration of the statute of limitations. The City maintains that this defense is a personal defense that may be asserted or waived.

GMAC contends it has the authority to override Mr. Line's decision to waive the statute of limitations defense. GMAC points out that Mr. Line attempted to waive the statute of limitations when the statute had expired two years earlier. GMAC asserts that Mr. Line could not waive the statute of limitations because he did not have the authority,

16

he did not assume the obligations of the City's note, and the acknowledgement and reinstatement constituted a new obligation that did not reinstate the City's note.

Underlying GMAC's arguments is the assumption that the expiration of the statute of limitations causes the loan obligation to become invalid, so there was nothing left for Mr. Line to reinstate or waive. However, the failure of a party with standing to assert the affirmative defense of expiration of the statute of limitations causes the defense to be waived and the obligation to remain binding and enforceable. *See CHD, Inc. v. Boyles*, 138 Wn. App. 131, 138-39, 157 P.3d 415 (2007).

In *CHD*, this court concluded that CHD, a party to a foreclosure proceeding, had waived its right to raise the statute of limitations defense on the underlying obligation by failing to employ statutory presale remedies. *Id.* at 134. CHD filed a declaratory action regarding the statute of limitations, but did not seek to enjoin the sale. *Id.* at 138. While the court concluded that CHD failed to enjoin the sale, the court also discussed the effect of the expiration of the statute of limitations:

> A debt is not extinguished by the expiration of the statute of limitations on its remedy for enforcement of the contract. Similarly, the trust deed securing the obligation is voidable, not void, upon the expiration of the contract's statute of limitation. Thus, CHD's debt was not extinguished and power of sale was merely subject to challenge—as provided for in [RCW 61.24.130].

*Id.* at 138-39 (citations omitted).

17

GMAC argues that the City's failure to file a creditor's claim in Ms. Swan's probate proceeding, and Mr. Line's failure to assume any personal obligation under the City's note, rendered the statute of limitations useless. We will not consider these claims as they are not supported by any authority. *Am. Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 7, 802 P.2d 784 (1991).

Moreover, GMAC fails to respond to the City's argument that the only impact of failing to have anyone assume the City's loan and having Mr. Line accept ownership of the property was that he took ownership of the property subject to the City's deed of trust lien. *See* RCW 11.12.070. GMAC also fails to respond to the City's argument that deeds of trust securing what began as or have become nonrecourse notes are valid and enforceable, even in situations where the obligor cannot be sued. For example, a deed of trust lien remains valid and enforceable as a lien against property even when the debt obligor has been discharged from any liability in bankruptcy. *See, e.g., Boeing Employees' Credit Union v. Burns*, 167 Wn. App. 265, 282-83, 272 P.3d 908, *review denied*, 175 Wn.2d 1008, 285 P.3d 885 (2012).

Mr. Line's actions did not create a new contract but, rather, validated the existing obligations. Waiver of the statute of limitations, whether done affirmatively or through a failure to assert the defense, causes the obligation to remain valid and enforceable. *See,*

18

*e.g.*, *CHD*, 138 Wn. App. at 138-39. The statute of limitations is an affirmative defense that the record owner of the property has the right, but not the obligation, to assert pursuant to RCW 7.28.300.

Mr. Line had the authority to assert or waive the statute of limitations defense. Here, Mr. Line chose to waive the defense.

*Conclusion.* GMAC lacks standing other than to assert legal arguments that its own lien should have priority. Under the circumstances of this case, GMAC shows no legal basis why the City's deed of trust does not retain first priority. Thus, the City should have summary judgment in its favor.

We also conclude Mr. Line waived any defenses he may have had. We remand to the trial court for further action consistent with this decision.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____          _____
Brown, J.                                Siddoway, A.C.J.

19